Submitted on record and briefs March 1, conditions for reinstatement imposed April 6, 1983

In re Complaint as to the Conduct of

# RONALD J. LOEW,
*Accused.*

(SC 28180)

661 P2d 922

Gerald R. Pullen, Portland, filed the brief for the accused.

Martha M. Hicks, Portland, and Duffy, Gibson, Hicks & Huber, Portland, filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

This is a disciplinary proceeding instituted by the Oregon State Bar against Ronald J. Loew, an attorney. Both the Trial Board and the Disciplinary Review Board found the conduct of the accused violated the Code of Professional Responsibility, specifically, DR 2-110(B)(3); DR 6-101(A)(3); and DR 7-101(A)(1), (2) and (3).

DR 2-110(B)(3) provides:

"A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment and a lawyer representing a client in other matters shall withdraw from employment, if:

"(3) mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively."

DR 6-101(A)(3) provides:

"A lawyer shall not:

"(3) Neglect a legal matter entrusted to him."

DR 7-101(A)(1)(2)(3) provides:

"A lawyer shall not intentionally:

"(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the disciplinary rules, except as provided by DR 7-101(B).
* * *

"(2) Fail to carry out a contract of employment entered into with a client for professional services, * * *

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

The complaint alleges:

"III·

"In December, 1979, the accused accepted employment as an attorney for HENRIETTE HUME. On or about January 15, 1980, the accused accepted a retainer in the amount of $2,000 to represent her."

"IV

"Ms. Hume retained the accused for the purpose of negotiating with certain creditors regarding medical bills incurred by her in 1979."

"V

"Ms. Hume terminated the accused's employment in September, 1980. During the term of his employment, the accused failed and neglected to negotiate the above mentioned medical bills, nor did he withdraw from employment prior to September, 1980."

As a second cause of complaint:

"II

"In addition to the employment responsibilities described in paragraph IV above, Ms. Hume retained the accused for the purpose of arranging to have her clothing and personal effects sent to her in Austria."

"III

"Between December, 1979 and September, 1980, despite numerous requests and opportunities to do so, the accused failed and neglected to send Ms. Hume's clothing and personal effects to her."

And as a third cause of complaint:

"II

"On or about April 21, 1980, in addition to the terms of employment set forth in paragraph IV of the first cause of complaint and paragraph II of the second cause of complaint, Ms. Hume expressly authorized and requested the accused to prepare and file a petition for the dissolution of her marriage."

"III

"Between April 21, 1980, and September, 1980, the accused failed and refused to prepare and file the petition for dissolution of marriage on behalf of Ms. Hume."

The Trial Board found the accused guilty on all three causes of complaint. The Trial Board, however, was impelled to point out to the Disciplinary Review Board and this court that two of the three Trial Board members found that the first and second causes of complaint stemmed from the conduct complained of in the third cause of complaint, and that they were minor and would require only a private reprimand. The third member of the Trial Board found that the conduct referred to in the first cause of complaint was serious in nature, particularly in light of the evidence that the billings were eventually turned over for collection.

The Disciplinary Review Board found the accused not guilty of the first two causes of complaint but guilty of the third. One member dissented concluding that the accused was guilty also on the second cause of complaint. The Board recommended that the accused be placed on two years probation with the following conditions:

"(1)   That the Accused not engage in the practice of law before October 1, 1982;

"(2)   That the Accused seek out and undergo appropriate medical treatment, therapy or counseling with a qualified and duly licensed physician, psychologist or psychiatrist of the Accused's choice beginning immediately;

"(3)   That prior to resuming the practice of law, whether on or after October 1, 1982, the Accused provide the Executive Director of the Oregon State Bar with an opinion letter from such physician, psychologist or psychiatrist, or other appropriate licensed practitioner, that the Accused has undergone all necessary counseling and therapy with said practitioner and that the practitioner is of the opinion that the Accused is now able, without significant physical difficulties or emotional problems, to engage in the practice of law."

The basis for all three causes of complaint arose out of the client's contact with the accused regarding a domestic relations matter. When she first contacted the accused she was not sure she wanted to proceed with a dissolution proceeding. The client was an Austrian citizen and was planning to return to Austria. She asked the accused to arrange to have her clothing and personal effects sent to her and to negotiate with certain creditors regarding medical bills. The accused received a retainer of $2,000. It was not until some four months later in April, 1980, that the client specifically requested the accused to file the petition for dissolution. He did not do so, nor did he negotiate regarding the bills, nor did he send her clothes and personal effects to Austria. Some five months later the client terminated the accused's services and retained another attorney.[1]

A review of the record establishes that the accused admits doing nothing about the petition of dissolution after

---

[1] At this time the accused sent the $2,000 retainer fee to the second attorney.

the client's request. He admits he was not feeling well during this time and was not in town during most of the time. He appears to be sincerely regretful that he did not file the petition of dissolution and personally apologized to the client.

On the question of the clothes and personal effects the accused testified that he did not believe he was responsible for actually sending them as they were in her husband's possession. The husband's lawyer had reported to the accused that they were packaged and that an inventory had been made of the contents. The accused said, "[W]hy they didn't send it, I don't know." The parties did later arrange between themselves and husband's attorney for the package to be delivered to the client through a third party.

The accused testified: "I wasn't given $2,000 to send her clothes back to her or settle her medical bills, I was given $2,000 to represent her in the event that a divorce came up." But the accused testified that he told the client the bills would have to be taken care of in the dissolution proceeding. He felt there was no point in trying to make a settlement "since she had no money to pay for them." The second attorney hired by the client testified before the Trial Board that he had contacted the creditors and told them that the dissolution proceeding would determine the arrangement for payment of the bills. He indicated he had several conversations with the creditors during the dissolution proceedings keeping them informed on the status of the case and assuring them that arrangements would be made for payment. The second attorney considered this to be a part of the handling of the dissolution.

We do not analyze this case from the standpoint of three causes of complaint because the accusations all stem from the accused's acceptance of employment in the representation of the client in a dissolution proceeding. In failing to represent the client adequately the accused has violated certain Disciplinary Rules.

■ ■    We first conclude the evidence is not sufficient to find the accused guilty of failure to return the client's clothes and personal effects. There is no evidence that the client expected the accused personally to send them to her.

The evidence indicates that the accused knew the clothes were ready to be mailed and he assumed the husband and husband's attorney would do that. We conclude, however, that the accused violated DR 6-110(A)(3) and DR 7-101(A)(1), (2) and (3) in failing to establish communication with the client's creditors to inform them of the dissolution proceedings and to assure them arrangements would be made for payment of the bills in the dissolution decree. As the accused noted, the bills would have been taken care of in the proceeding. The client's presence in Austria did not permit her to stay in contact with the creditors here. Under the circumstances she had a reasonable expectation that her attorney would handle this matter as a part of the dissolution proceeding. This is not unusual in dissolution cases and we find the accused here should have assumed the responsibility for some communications regarding the bills. We also find the accused guilty of failure to file the petition of dissolution by his own admission and the evidence in the record. This constituted a violation of DR 2-110(B)(3), DR 6-101(A)(3) and DR 7-101(A)(1), (2) and (3).

The accused suggests, however, that we should not impose any further sanctions beyond that imposed previously in *In re Loew,* 292 Or 806, 642 P2d 1171 (1982) which involved this accused. There the accused was suspended from the practice of law for 30 days "and thereafter until such time as the accused presents satisfactory evidence to this court that he has repaid $500 to his former client and a written statement by his psychiatrist that the accused is sufficiently free of emotional difficulties to competently practice law." 292 Or at 812.

We concluded in *In re Loew, supra,* that "the conduct of the accused was an isolated event caused by emotional difficulties" with which he was dealing effectively. The accused's psychiatrist testified in *In re Loew,* to the effect that the accused was suffering from burn-out syndrome common to professionals but that he felt the accused was more than halfway down "the road to recovery." We note that the acts of the accused complained of in this proceeding occurred during the same time as those involved in the previous proceeding. The accused has not petitioned this court for reinstatement to the practice of

law since the last disciplinary proceeding. That being the case the question is what sanction is appropriate at this juncture.

The opinion of the Trial Board states:

"It was apparent to all three trial board members throughout the course of this proceeding that the Accused was significantly depressed. The Accused presented a very flat, morbid affect throughout the hearing. It is the strong feeling of all three panel members that there are emotional or psychological difficulties assailing the Accused which present the real underlying source of the conduct complained of. However, the Accused was not willing to voluntarily share those concerns with the trial board."

The accused's demeanor is not apparent on the cold record, but we defer to the Trial Board members who had an opportunity to observe the accused and we accept the Board's conclusion as accurate.

The concurring opinion in *In re Loew, supra,* states:

"The decision as to the appropriate sanction in such cases is more difficult because the lawyer's motivation is different from that of the lawyer who steals or lies to obtain advantage. But the need for protection of the public and integrity in the administration of justice is as great as that which exists in the case of dishonest lawyers." 292 Or at 816.

We believe in this case that both the public and its confidence in the administration of justice is best protected by a continuation of our previous sanction requiring that before consideration of reinstatement the accused must present evidence satisfactory to this court that he is sufficiently free of emotional difficulties to practice law competently. Because the accused is not now practicing law it would be premature to impose a period of probation. At the time the accused presents evidence of his competency to practice law and requests reinstatement we will then consider whether a period of probation is appropriate.

Conditions for reinstatement imposed. Judgment to Oregon State Bar for costs.