Submitted on record and brief December 23, 1983, condition for reinstatement imposed January 24, 1984

## In re Complaint as to the Conduct of

### RONALD J. LOEW,
*Accused.*

(SC 29775)

676 P2d 294

No appearance contra.

Martha M. Hicks, Portland, filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

The accused has been the subject of two previous disciplinary proceedings. *In re Loew,* 292 Or 806, 642 P2d 1171 (1982) and *In re Loew,* 294 Or 674, 661 P2d 922 (1983). The incidents in those cases and the ones involved here all occurred during a period of time when the accused had been psychiatrically diagnosed as suffering from "burn out syndrome." Our opinion observed: "A common pattern of the syndrome is that a professional person feels obliged to help each person who seeks his help, takes on more work than he can handle, including work he finds unpleasant, and evades such work by procrastination and self-denial." (Footnote omitted.) 292 Or at 811.

In the first case we suspended the accused from the practice of law for 30 days and thereafter "* * * until such time as the accused presents * * * a written statement by his psychiatrist that the accused is sufficiently free of emotional difficulties to competently practice law." 292 Or at 812. In the second case we noted the accused had not yet sought reinstatement and that, therefore, it would be premature to impose a period of probation. We continued the requirement that "before consideration of reinstatement the accused must present evidence satisfactory to this court that he is sufficiently free of emotional difficulties to practice law competently." 294 Or at 681, and we indicated we would then consider whether a period of probation would be appropriate. The accused has not yet sought reinstatement to practice law.

We have reviewed the record and find the following statement of facts as set forth by the Disciplinary Review Board to be accurate.

"The Accused represented Doris McCauley in a dissolution suit and in an unrelated matter concerning certain joint property investments [between McCauley and] Swibies. The Accused accepted $500.00 as a retainer for the property matter and $100.00 to apply towards the dissolution proceedings. The Accused agreed with McCauley that he would recover his attorney's fees in the dissolution proceedings from McCauley's husband. McCauley stated that she was not quoted an hourly rate for the Accused's fees. The Accused never tendered to McCauley an accounting for any hours spent on either of the two matters. The Accused fixed his

attorney's fees at $100.00 per hour for each of the two unrelated matters, but there was no written fee agreement.

"As a portion of the settlement of the marriage dissolution, $2,000.00 cash plus a promissory note to McCauley, was forwarded to the Accused. The promissory note for $3,000.00 was obtained upon the advice of the Accused to cover the costs of Mrs. McCauley's moving expenses and transportion. McCauley was to furnish, through the Accused, documentation showing her expenses. When such documentation was made, her expenses, up to a maximum of $3,000.00 would be paid. The Accused received the check for $2,000.00 and told McCauley that he needed to keep $1,000.00 for additional legal fees forthcoming and gave her a check for the other $1,000.00. McCauley made no oral protest at that time, but testified she was shocked over having more fees taken. McCauley testified that she was frustrated over her inability to communicate with the Accused and never got to talk to him personally, and always spoke to the message phone. McCauley further testified that her calls were not returned promptly by the Accused.

"As to the property matters, McCauley and her partner, Swibies, had acquired certain properties scattered throughout Oregon while they were living together, but had no written agreement as to the contribution, management, or division of any of the assets. After McCauley and Swibies came to a parting of the ways, many disputes arose, including contribution with respect to monthly payments on a mortgage for property located in Tigard. Swibies, through his attorney and through direct contact with the Accused, insisted that McCauley make further contributions to pay her share on the mortgage on the Tigard property. A demand letter was sent by the attorney for Fred Meyer Savings and Loan informing McCauley that the loan was in default and if the default was not cured within thirty days from the date of the notice, that foreclosure would take place. Such notice was mailed to McCauley's regular address, but she testified that she never received the same. Her first notice that there was any problem with the mortgage was a phone call from Swibies, who called her directly after the Accused failed to pass on his demands to McCauley. The defaults were cured and no foreclosure took place and McCauley suffered no damages. The Accused charged McCauley $1,700.00 for his work in the dissolution and the property matter. His total time spent, according to the Accused's testimony, was seven hours on both matters.

"In September of 1981, McCauley retained Attorney Kenneth Solomon, and terminated her relationship with the

Accused. On September 28, 1981, Solomon wrote to the Accused requesting that the Accused's entire file be made available for pick up by Solomon at the Accused's office. Solomon received no response to this letter, and called the Accused on October 13, and received a telephone message recording. The Accused returned Solomon's call the same day, but Solomon was unavailable. Solomon returned the Accused's call on either the 13th or 14th of October, and again found the message recorder. The Accused returned the call on October 15, and stated that he was out of town and would call as soon as possible when he returned to town. Solomon replaced his call two or three additional times between the 15th and 20th of October. On October 20, 1981, Solomon wrote his letter of complaint to the Bar. The requested files were not made available until June of 1982. Solomon and McCauley testified that the files were necessary in order to document expenses of McCauley regarding her move from Seattle, although the note for $3,000.00 was not due until January 24, 1982. Solomon testified as to the Swibies matter, it was crucial that he receive the files right away. Solomon testified that the Swibies litigation had not been resolved at the time of the trial board hearing. Solomon further testified that McCauley incurred an additional $1200.00 in legal fees as a result of the Accused's neglect. Solomon testified that because of the complexities involved in untangling of Swibies and McCauley's various property matters, the Accused could not have completed that case within the period of time that he was involved in representation, but that considerable extra effort had to be expended by Solomon by virtue of the delay in the Accused handling the matter expeditiously. Solomon testified that considerable more interviews with McCauley were required to extract from her memory the various transactions with Swibies which would not have been necessary if the file had been available. Solomon further testified that considerable information concerning mortgage payments, home rentals, and other agreements between the parties were crucial and could not be recreated entirely by interviews with McCauley."

There are four charges against the accused. The first alleges a violation of DR 9-102(B)(4) which provides:

"(B)   A lawyer shall:

"* * * * *

   "(4)   Promptly pay or deliver to the client as requested by a client the funds, securities, or

other properties in the possession of the lawyer which the client is entitled to receive."

The accused's action in retaining $1,000 of the $2,000 from the dissolution settlement without the consent of the client is the basis for this charge. Both the Trial Board and the Disciplinary Review Board found the accused guilty of this charge. By the accused's own testimony he performed little, if any, work on the property matter after retaining the $1,000 because he was replaced by attorney Solomon. In spite of this, the $1,000 was not returned to the client until just prior to the hearing in this case. We agree that this constituted a violation of DR 9-102(B)(4).

The second charge alleges a violation of DR 2-106(A) and (B) and DR 9-102(B)(3) for charging the client $1,700 in fees for seven hours of work and for failure to keep written records of the time spent. DR 2-106(A) and (B) provide:

"(A) A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. * * *

"* * * * *"

DR 9-102(B)(3) provides:

"(B) A lawyer shall:

"* * * * *

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them."

Both the Trial Board and the Disciplinary Review Board found the accused not guilty on this charge. We agree with the Trial Board that it is difficult to see how the accused can be guilty of failing to return the $1,000 to the client and guilty of making an excessive charge of $1,000. Either it was one or the other but it was not both on the facts of this case. Because we have concluded the accused should have returned the money to the client in a timely manner, we do not determine whether

it might have been an excessive fee. For the same reason we do not reach the question of whether proper records were kept. The accused is not guilty of the second charge.

The third charge is an alleged violation of DR 2-110(B)(3), DR 6-101(A)(3) and DR 7-101(A)(1)(2) and (3). DR 2-110(B)(3)[1] requires a lawyer to withdraw from employment if his mental or physical condition renders it unreasonably difficult for him to carry out his employment effectively. DR 6-101(A)(3)[2] forbids a lawyer from neglecting a legal matter entrusted to him. DR 7-101(A)(1)(2) and (3)[3] provides that a lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law, or intentionally fail to carry out a contract of employment entered into with a client for professional

---

[1] DR 2-110(B)(3) provides:

"(B)  Mandatory withdrawal.

"A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

"* * * * *

"(3)  His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively."

[2] DR 6-101(A)(3) provides:

:FONT:* "(A)  A lawyer shall not:

"* * * * *

"(3)  Neglect a legal matter entrusted to him."

[3] DR 7-101(A)(1)(2) and (3) provide:

"(A)  A lawyer shall not intentionally:

"(1)  Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

"(2)  Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

"(3)  Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

services, or intentionally prejudice or damage his client during the course of the professional relationship. The bases for these charges are the accused's failure to communicate with McCauley regarding the status of her dissolution settlement and the accused's failure to communicate with McCauley and opposing counsel on the Swibies property matter.[4] The Trial Board and the Disciplinary Review Board found the accused not guilty on this third charge because the evidence was not clear and convincing that "the accused neglected meaningful communication with his client."

With reference to the dissolution proceeding McCauley testified,

> "I was frustrated with the fact that it didn't seem like we were communicating and every time I would call to talk to him I got the message machine and would leave a message on the thing to call. And when he called me, if I was on the phone and I would call back, and I would get the machine again. So, we just never seemed to catch up with each other. It was always a message on the machine."

The accused testified that McCauley usually called at noon when the recording machine was on and that he had difficulty reaching her at her place of work when he returned the calls.

The failure of an attorney to be readily available to clients is a complaint commonly heard in the legal profession. It is undoubtedly an exasperating experience for a client to feel in need of counsel and have that need go unresolved because the attorney fails to communicate. We cannot say, however, that the evidence in this case establishes clearly and convincingly that the accused avoided communication with his client.

With respect to the accused's failure to pass on to McCauley the communications of Swibies and opposing counsel resulting in the foreclosure warning, we note that the accused was in communication with Swibies' lawyer and was able to protect McCauley from a foreclosure proceeding by

---

[4] This cause of complaint also originally alleged that the accused "failed to initiate collection efforts on the promissory note * * * although his client supplied him with the records necessary to initiate collection" and that as a result of the accused's failure to act on the property matter "foreclosure proceedings were brought against McCauley." These allegations were withdrawn by the Bar.

convincing opposing counsel that Swibies should pay the mortgage. This failure to communicate was based on the same set of circumstances as the failure to communicate regarding the dissolution decree and we do not find this evidence sufficient to find the accused guilty of this charge. We find no violation of DR 2-110(B)(3), DR 6-101(A)(3) or DR 7-101(A)(1)(2)(3).

The fourth cause of complaint, like the third cause of complaint, charges a violation of DR 2-110(B)(3), *see* note 1, *supra,* DR 6-101(A)(3), *see* note 2, *supra,* and DR 7-101(A)(1)(2)(3), *see* note 3, *supra.* This charge is based on the accused's failure promptly to deliver McCauley's files to Solomon, causing difficulties in Solomon's representation of McCauley and resulting in additional legal fees to McCauley. The Trial Board found the accused not guilty of this charge but the Disciplinary Review Board found the accused guilty of violation of DR 6-101(A)(3) and DR 2-110(B)(3).

The evidence is that Solomon made a written demand on the accused for the files on September 28, 1981. There followed unsuccessful attempts by both Solomon and the accused to communicate by telephone. Solomon made his complaint to the Bar on October 20, 1981.

It is true, as the Trial Board stated, that the files were always available at the accused's office but it is important to look at what was happening to the accused at this time. The accused testified that his practice was not very active in the fall of 1981; he was turning his practice over to other lawyers on a case by case basis and he was not taking any new cases. He was spending a great deal of time at the coast and was getting his mail only once or twice a week. It is readily apparent why Solomon had difficulty in communicating with the accused.

We conclude that under these circumstances the accused should have taken the initiative in getting the files to Solomon rather than waiting for them to be picked up. We note the accused did, in fact, deliver them to Solomon's office but this did not occur until June, 1982. In the meantime, McCauley and Solomon were confronted with the task of reconstructing the materials in the files. It is our conclusion that under all the circumstances that the accused did neglect a

legal matter entrusted to him and is, therefore, guilty of violating DR 6-101(A)(3).

We also find a violation of DR 2-110(B)(3) because the accused's mental and physical condition rendered it unreasonably difficult for him to carry out his employment effectively. He should have withdrawn from the representation of McCauley.

We do not impose further sanctions on the accused. We repeat, however, that when the accused petitions for reinstatement he must present evidence satisfactory to this court that he is sufficiently free of emotional difficulties to practice law competently. The propriety of imposing probation, and its term and conditions, will be determined by the evidence presented at that time and with due consideration to this and the previous two cases.

Costs to the Oregon State Bar.