Submitted on the record June 5, suspension ordered August 8, 1985

In re Complaint as to the Conduct of
# JOHN E. SASSOR,
*Accused.*

(83-13, 83-49; SC S31122)

704 P2d 506

Victor Pagel, Salem, for the Oregon State Bar.

D. Wesley Hamilton, Salem, for the accused.

PER CURIAM

## PER CURIAM

In 1983,[1] the Oregon State Bar filed a complaint against the accused alleging seven specific charges, contained in four causes of complaint, involving two clients of the accused. The first three causes involved the representation by the accused of Mr. Dillon. The fourth cause arises out of the accused's representation of Mrs. Lafky.

The Trial Board found the accused guilty of three charges and recommended disbarment. The Disciplinary Review Board found the accused guilty of four charges and recommended a one year suspension from practice and the successful completion of an approved course on legal ethics. The Bar petitioned this court to adopt the opinion of the Disciplinary Review Board with modification. In its brief to the court, the Bar requests that the accused be disbarred. In his brief before this court, the accused concurs in the sanction recommended by the Disciplinary Review Board. Both the accused and the Bar waived oral argument and the matter was submitted to the court on the record and briefs herein.

### DILLON

Upon our independent review of the evidence, we find the facts to be as follows:

In July 1982, Dillon employed the accused to represent Dillon on a workers' compensation claim and on a child custody matter. In order to pay lawyer fees to the accused, Dillon transferred the title and possession of his 1955 Dodge flatbed truck to the accused in return for a credit of $1,000 toward lawyer fees. Thereafter, the accused's secretary made out two receipts for the $1,000, allocating $350 to the custody case and $650 to the workers' compensation case.

Subsequently, Dillon requested that the accused represent him in a juvenile court matter relating to the same child involved in the custody matter. Initially, the accused denied that he ever agreed to represent Dillon in the juvenile court matter. Dillon swore to the contrary. Without notifying

---

[1] The Rules of Procedure applicable to this case are those adopted by the Board of Governors and approved by this court, effective January 18, 1982. *See* BR 1.5(a), effective January 1, 1985.

Dillon, the accused failed to appear at the scheduled hearing before the juvenile court. As a result of the accused's failure to attend the juvenile court hearing, he was discharged by Dillon. Approximately two weeks later, Dillon's new lawyer wrote to the accused and demanded the transfer of Dillon's files, the return of Dillon's $1,000 and an itemization of fees charged if the accused was claiming any part of the $1,000.

In response to that letter, the accused wrote to the new lawyer and informed him that he was claiming a lien on the requested files for $325 in fees claimed to be owed by Dillon. Shortly thereafter, the accused informed the new lawyer that he had possession of a truck belonging to Dillon and he was charging Dillon $2.50 per day storage.

*First Cause.*

The Bar charged the accused with misconduct and failing to preserve the identity of funds and property of a client. Specifically, the Bar charged that the accused violated DR 1-102(A)(4), which states that "A lawyer shall not * * * [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation," and that he violated DR 9-102(B)(3), which requires that "A lawyer shall * * * [m]aintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them."

In his Answer, the accused admitted that he had been employed by Dillon and that he had agreed to give Dillon a credit of $1,000 toward lawyer fees upon the delivery of the truck. The accused maintained that, following his dismissal, he had offered to return the truck to the client. The accused asserts that because the client failed to accept the return of the truck, the truck ultimately was surrendered to another for storage fees. The accused also contended that he was withholding the client's files under a claimed lien for $325 in lawyer fees owed to the accused by the client. Both the Trial Board and the Disciplinary Review Board found that the accused took the truck as an advance payment for services that the accused was to render in behalf of the client, and that the accused misrepresented his original intentions after the client terminated the accused's services and requested the return of the unearned balance.

Both the Trial Board and the Disciplinary Review Board concluded that the accused had engaged in misrepresentations to the client in respect to his conduct and legal position relating to the truck, specifically, the claim for the storage lien and for the lawyer's lien. We agree with the conclusions of the lower tribunals in this respect.

Having concluded that the truck was taken as a fee, the lower tribunals concluded that the accused was not guilty of violating DR 9-102(B)(3) for failure to account for client's property, that is, the truck. We agree that the evidence was insufficient to find the accused guilty of the second charge of this cause.

*Second Cause.*

The Bar charged the accused of violating DR 2-106(A), which provides that "A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee." This cause relates to the accused charging the client a fee in a workers' compensation matter in violation of ORS 656.388(1).[2] The record is clear that the accused did not obtain approval from the workers' compensation referee or board in accordance with the statute before making charges for work upon Dillon's workers' compensation claim. Although the accused initially contended that the work was being done to assist a chiropractor in obtaining his fees, the accused now takes no issue with the conclusions of the Trial Board and the Disciplinary Review Board that he had violated DR 2-106(A). We conclude that the accused did violate that disciplinary rule.

*Third Cause.*

The Bar alleged that the accused violated three separate provisions of the Disciplinary Rules in respect of the juvenile court hearing. DR 6-101(A)(3), neglecting a legal

---

[2] ORS 656.388(1) provides:

"No claim for legal services or for any other services rendered before a referee or the board of the Court of Appeals or Supreme Court shall be valid unless approved by the referee or board, or if proceedings on appeal from the order of the board are had before any court, unless approved by such court. In cases in which a claimant finally prevails after remand from the Supreme Court, Court of Appeals or board, then the referee, board or appellate court shall approve or allow a reasonable attorney fee for services before every prior forum."

matter entrusted to him; DR 7-101(A)(2), failing to carry out a contract of employment; and DR 7-101(A)(3), intentionally prejudicing or damaging his client.[3] The Trial Board concluded that the accused was not guilty of neglect or failing to carry out a contract, finding that the evidence was unclear whether the accused actually had agreed to attend the hearing. The Trial Board did not reach the issue of whether the accused had intentionally prejudiced his client under DR 7-101(A)(3). After its review of the facts, the Disciplinary Review Board concluded that the accused had neglected a legal matter entrusted to him and found him guilty of violating DR 6-101(A)(3).[4] Before us, the accused takes no issue with the conclusion of guilt reached by the Disciplinary Review Board on the accused's violation of DR 6-101(A)(3). We conclude that the accused did violate that disciplinary rule.

We concur with the conclusions of the lower tribunals that there was insufficient evidence to find the accused guilty of intentionally failing to carry out a contract of employment or intentionally prejudicing his client. Although neither the Trial Board nor the Disciplinary Review Board commented upon the third charge under this cause, violation of DR 7-101(A)(3), we conclude that there is insufficient evidence to find the accused guilty of intentionally prejudicing his client. The accused is not guilty of violating DR 7-101(A)(2) or (3).

---

[3] DR 6-101 Failing to Act Competently.

"(A) A lawyer shall not:

"* * * * *

"(3) Neglect a legal matter entrusted to him."

DR 7-101 Representing a Client Zealously.

"(A) A lawyer shall not intentionally:

"* * * * *

"(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

[4] The Disciplinary Review Board apparently miscited to "DR 7-101(a)(2)," but the context of the written opinion makes it clear that the Disciplinary Review Board was referring to DR 6-101(A)(3).

## LAFKY

*Fourth Cause.*

From our independent review of the evidence, we find the facts to be as follows:

From April through November, 1982, the accused represented Lafky in matters relating to a marriage dissolution proceeding. In mid-November 1982, Lafky delivered to the accused at his office a check from the Oregon Department of Revenue in the amount of $498 and payable to her former husband. Apparently, the check was a homeowner's property tax refund payment. The accused signed the name of the payee, endorsed the check with his signature, negotiated the check and deposited the proceeds in the accused's trust account. Thereafter, he delivered a check drawn on his trust account, in the amount of $498, made payable to both Lafky and her former husband. When the former husband's lawyer found out about the negotiation of the check, she made a conditional demand upon the accused for return of the check or the proceeds therefrom. The accused had no authorization from the former husband of his client to sign the check with the former husband's name. Ultimately, the accused returned the amount of $498 to the Oregon Department of Revenue and the Department of Revenue issued another check to the client's former husband.

The accused defends his actions by contending that he believed that the check had been delivered to his client with authority to endorse the check and that his course of action was in compliance with the decree of dissolution. There is no evidence that the accused intended to keep the money for himself, but the record is clear that the accused knew he had no authority from his client's former husband to sign the husband's name to the check. He therefore engaged in misrepresentation proscribed by DR 1-102(A)(4) and we conclude that he is guilty of a violation thereof.

### CONCLUSION

The Trial Board unanimously recommended disbarment of the accused. The Disciplinary Review Board disagreed, believing that the acts of the accused and his underlying intent were not so egregious as to warrant disbarment. It

concluded that he should be suspended for a period of one year and until he completes an approved course on legal ethics.

We have concluded that the accused is guilty of two violations of the Disciplinary Rules proscribing acts of misrepresentation, one violation for neglect of a client's business, and one violation for charging an illegal fee. Moreover, by "taking no issue" with the charge of asserting a claim of an illegal fee and neglecting the matter entrusted to him, the accused effectively concedes his guilt, without so admitting.

The accused's defenses to the charges relating to misrepresentation continue to assert the proposition that it was the accused's clients who were at fault in the matter. Contrary to the assertions made by the accused, we believe that this is a case where the accused failed to abide by the standards of honesty and fair dealing required by the Disciplinary Rules. The weakness of the accused's position is further demonstrated by the fact that both lower tribunals found the accused to lack credibility in one or more circumstances. Further, as pointed out by the Bar in its brief in this court, the accused has given no indication that he now understands that his handling of the claimed liens and check endorsement matters were patently unethical. Thus, while we agree with the Disciplinary Review Board that the accused's misconduct was not sufficiently egregious to cause his disbarment, we conclude that a one-year suspension is the appropriate sanction, together with the requirement that the accused pass a Professional Responsibility Examination approved by the Board of Bar Examiners before the suspension is lifted. *See* Rule 4.05 of the Rules for the Admission of Attorneys in Oregon.

Costs to the Oregon State Bar.