Submitted August 6, 1985, on the record and brief, accused disbarred August 27, 1985

In re Complaint as to the Conduct of

## JOHN E. SASSOR,
*Accused.*

(83-72, 83-108, 83-130, 84-10; SC S31600)

705 P2d 736

No appearance by the accused.

John A. Bennett filed a brief for respondent. With him on the brief were Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

PER CURIAM

## PER CURIAM

The Oregon State Bar charged John E. Sassor, a lawyer admitted to practice in this state, with numerous violations of the Disciplinary Rules in the representation of clients in several unrelated matters. The Bar's complaint contained 15 causes of complaint stated in 76 paragraphs. The first three causes of complaint were withdrawn and no evidence was introduced to support them. The accused made no appearance before the trial panel or in this court. The Bar presented its evidence to the trial panel, which in each case found facts constituting disciplinary violations and concluded that the accused should be disbarred. Having reviewed the evidence, we reach the same findings and conclusions on most charges.

The trial panel stated its findings in a lengthy "Opinion" and a shorter "Summary of Decision." We draw upon both in summarizing the findings.

## I. MR. AND MRS. FUCHS

The accused was retained by Jacob and Sally Fuchs to represent them in bankruptcy proceedings. In the course of this representation, the accused undertook to negotiate with a creditor, Finance One, to permit the Fuchses to keep one of two automobiles which were pledged as security. When Finance One eventually filed suit to repossess the cars and notified the accused of the suit, the accused made no appearance and made no adequate effort to assist his clients to retain one of the cars when this could have been accomplished. The result was a default judgment against his clients, resulting in the loss of both automobiles and a judgment for costs.

■　　The trial panel concluded that this constituted *neglect of a legal matter entrusted to the accused.* It also found "that the accused has violated DR 7-101(A)(1) and (3)." These subsections forbid a lawyer, to "intentionally * * * [f]ail to seek the lawful objectives of his client through reasonably available means permitted by law" and to "intentionally * * * [p]rejudice or damage his client" during the professional relationship. Both of the latter charges require a showing of intent. A finding of intent will often depend on an inference, because the accused does not and other witnesses cannot give direct testimony of such an intent. In such a case it would help

if the Bar, and particularly the trial panel, which ordinarily sees the witnesses, would explain why the inference should be drawn. That was not done here. The closing argument of the Bar's counsel omitted any reference to "intentionally" when discussing DR 7-101(A)(1) and (3), and the trial panel did not explain why it found the accused in violation of those rules.

The evidence shows that on January 12, 1983, the accused wrote a letter to the attorney for Finance One stating that his clients "would like to keep the VW and hereby offer to pay the fair market value of said car for a release of the security interest upon it." The attorney testified Finance One might have gone along with such an arrangement, that he attempted to contact the accused and did not get a response, and that on January 20, 1983, he took an order of default against Mr. and Mrs. Fuchs. Neglect clearly is proved, but we cannot infer an "intentional" failure from this testimony.

While the accused represented Mr. and Mrs. Fuchs in the bankruptcy proceeding, they were also considering a legal separation. The accused prepared a proposal for temporary support for Mrs. Fuchs and submitted it to Mr. Fuchs for consideration. Mrs. Fuchs regarded the accused to be representing her. Mr. Fuchs did not regard the accused as his attorney in the contemplated separation.

The Bar charged that when the accused submitted Mrs. Fuchs's demand for $1,400 monthly support to Mr. Fuchs, Mr. Fuchs made a counter-offer of $1,000, and that the accused failed to advise Mr. Fuchs that this was more than his income justified. The Bar charged that the accused undertook the representation of both parties without making the full disclosure required by DR 5-105(C). The trial panel found that "the accused did not adequately, if at all, advise the Fuchses that they should seek separate counsel, nor did he obtain the informed consent of both of them for a dual representation."

The testimony shows that the accused did not advise Mr. Fuchs to seek separate counsel. But Mr. Fuchs's testimony also is clear that he regarded the accused only as Mrs. Fuchs's counsel with respect to the separation and not as his counsel. Mr. Fuchs testified that the parties were living apart at the time (they later reconciled, and nothing was done about a legal separation), and although the bankruptcy proceeding

in which the accused represented both was still in process, "the one meeting where he proposed the financial support was at a separate meeting which did not involve any of the bankruptcy." The Bar's specific charge that the accused "undertook the representation of both Mr. and Mrs. Fuchs on their marital separation" is not supported by clear and convincing evidence. The Bar does not allege a conflict in the accused's simultaneous representation of Mrs. Fuchs in the marital dispute, and both Fuchses in the bankruptcy matter.[1]

Finally, the Bar charged, and the trial panel found, a violation of DR 9-102(B)(4) in that the accused did not on request return a check given him by Mrs. Fuchs for filing fees for the contemplated legal separation but instead applied it to his attorney fees.[2] We concur in that finding.

## II. BENDIKSEN

The accused was retained by Carl Bendiksen to represent him in a lawsuit filed by Bendiksen's former wife. Bendiksen testified that he had obtained a firm agreement

---

[1]
"DR 5-105   Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105 (C)

"(B) A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105 (C)

"(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

[2]
"DR 9-102   Preserving Identity of Funds and Property of a Client.

"* * * * *

"(B) A lawyer shall:

"* * * * *

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive."

that the accused's fee would not exceed $400. (Bendiksen later agreed to pay an additional $200 to depose a witness needed for his defense.)

Bendiksen also testified that he had told the accused to give him at least two weeks' notice of a trial date so that an essential witness could make arrangements to attend the trial. The accused did not get in touch with the witness, and he told Bendiksen of the trial date only the day before the trial was to begin, causing Bendiksen to spend much of the night in an unsuccessful effort to locate the witness. When Bendiksen appeared for trial the next morning, he was told that the case had been taken off the docket because it had been settled. Later the accused also told him of the settlement, but not its terms. The accused failed to follow through with completing documents necessary for the settlement, and Bendiksen eventually concluded the settlement on his own with opposing counsel. The accused then billed Bendiksen for $634 in attorney fees in addition to the $525 already paid and filed an action to collect them when Bendiksen failed to pay.

The Bar charged, and the trial panel found, that the accused violated DR 2-106(A) in seeking to collect additional fees beyond those agreed upon, and DR 6-101(A)(3) and DR 7-101(A)(2) in failing to give timely notice of the trial date and to contact an essential witness.[3] We concur in the findings that DR 2-106(A) and DR 6-101(A)(3) were violated. DR 7-101(A)(2) requires a finding that the lawyer "intentionally" failed "to carry out a contract for professional services."

---

[3] "DR 2-106  Fees for Legal Services.

"(A)  A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee."

"DR 6-101  Failing to Act Competently.

"(A)  A lawyer shall not:

"* * * * *

"(3)  Neglect a legal matter entrusted to him."

"DR 7-101  Representing a Client Zealously.

"(A)  A lawyer shall not intentionally:

"* * * * *

"(2)  Fail to carry out a contract of employment entered into with a client for professional services * * *."

Again, the trial panel did not explain how it drew the inference of intent in this case. The accused's failure to give his client advance notice of the trial date as requested, and then to tell him of its cancellation, might be neglect rather than intentional nonperformance. The attorney representing Mr. Bendiksen's wife, with whom Mr. Bendiksen finally concluded the settlement on his own behalf, testified that after sending the proposed documents to the accused he had no response from the accused either in writing or in answer to numerous telephone calls. In view of the fact that the accused did not expect to earn a fee for additional efforts, and considering his obvious dissatisfaction with the agreed-upon fees, we draw the inference that the accused intended to abandon further responsibility toward his client in completing the matter in which he had contracted to represent him, and therefore that he violated DR 7-101(A)(2).

Finally, the Bar charges that the accused violated DR 1-102(A)(4) and DR 1-103(C) in attempting to conceal documents from the Bar's investigators and in misstating the date when Mr. Bendiksen terminated his employment.[4] The trial panel found, as do we, that the accused untruthfully told the Bar's investigators that he was discharged in August 1982 rather than in February 1983.

---

[4]
"DR 1-102   Misconduct.

"(A) A lawyer shall not:

"* * * * *

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

"DR 1-103   Disclosure of Information to Authorities.

"* * * * *

"(C) A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of the general counsel, the local professional responsibility committees, the state professional responsibility board, and the board of governors as requested, subject only to the exercise of any applicable right or privilege."

"DR 6-101   Failing to Act Competently.

"(A) A lawyer shall not:

"* * * * *

"(2) Handle a legal matter without preparation adequate in the circumstances."

## III. HALLEMAN

The accused represented Carol Halleman in a dissolution proceeding. The Bar charged that in the course of this representation the accused violated DR 1-102(A)(4), DR 6-101(A)(2) and DR 6-101(A)(3). Mrs. Halleman testified that the accused told her that Oregon law did not allow spousal support unless the parties had been married at least 15 years. The trial panel concluded that the accused had not properly prepared himself to advise his client as required by DR 6-101(A)(2). The accused permitted counsel for his client's husband to modify an order, contrary to a previous agreement between the parties, so as to remove the husband's obligation to pay utility bills, without obtaining his client's consent to or even informing her of the change. He told Mrs. Halleman that the court had ordered a continuance of the dissolution case in order to accommodate the judge's schedule and opposing counsel's vacation plans. The case was not in fact postponed. Rather, the accused shortly before trial settled the case, without Mrs. Halleman's consent and contrary to her previous rejection of the terms of the settlement, and advised the calendar secretary to remove the case from the docket. Mrs. Halleman learned of this settlement from her husband and discharged the accused. We concur in the trial panel's conclusion that the accused violated DR 1-102(A)(4) and DR 6-101(A)(3) as well as DR 6-101(A)(2).

## IV. SANCTIONS

At the Bar's request, the trial panel held a separate hearing to consider evidence in aggravation or mitigation and to set a sanction.

The Bar maintains that the accused's conduct in the foregoing cases during 1982 and 1983 shows a "course of conduct" of intentional or negligent failure to carry out his professional obligations in the representation of his clients so as to require that he be disqualified from further practice of law. That was the conclusion of the trial panel. We reach the same conclusion.[5] *Cf. In re Mickelsen,* 297 Or 325, 683 P2d 87 (1984).

---

[5] In an earlier case arising from different disciplinary charges, *In re Sassor,* 299 Or 570, 704 P2d 506 (1985), we imposed a one-year suspension and a requirement that the accused pass a Professional Responsibility Examination before resuming the practice of law.

Suspension or permanent disbarment for violations of the Disciplinary Rules is not a form of punishment for criminal conduct or moral turpitude. Its purpose is to protect the public from incompetent, dishonest, or irresponsible professional behavior. No client should have to put up with the kind of conduct described by the accused's clients in the record before us. We agree with the trial panel that the accused should be disqualified from the practice of law.

Accused disbarred. Costs to Oregon State Bar.