Submitted on record July 26, accused suspended October 1, 1985

# In re Complaint as to the Conduct of
## CRAIG A. VAILE,
*Accused.*

### (83-134; SC S31791)

707 P2d 52

PER CURIAM

## PER CURIAM

The Oregon State Bar filed a complaint against Craig A. Vaile accusing him of unethical conduct in four separate causes. The first three causes arise chiefly from Vaile's alleged representation of Linda Shawcross. The fourth cause arises from Vaile's alleged failure to respond to the Bar's inquiries concerning the circumstances that gave rise to the first three causes.

The Trial Panel found that Vaile was guilty of the first, second and fourth causes and not guilty of the third cause of complaint. It determined that Vaile be suspended for a period of one year but that the execution of the suspension be stayed and that he be placed on probation for a period of three years on five separate conditions.[1]

We find Vaile guilty of the same three causes and not guilty of the other cause. We suspend him from the practice of law for a period of 60 days and place him on limited probation.

Linda Shawcross and her former husband, Jim Shawcross, were the owners as "fifty-fifty partners" of a motel and restaurant business in Pendleton, Oregon, known as the "Pendair Inn."

On July 2, 1982, Vaile prepared an agreement whereby "JRM Properties Incorporation" agreed to purchase a "one half interest in the Pendair Inn Partnership" from Linda Shawcross for the sum of $25,000. The sum of $1,000 was paid down with the balance to be paid in installments of $600 per month. The balance was to bear interest at the rate of 12 percent per annum. The shareholders of JRM Properties were Jim Shawcross, Matt Shawcross and Rick Eppinger. Matt Shawcross was the former stepson of Linda Shawcross.

In late November and early December 1982, Linda Shawcross and Millie Shade were interested in opening a small bakery and coffee shop in Pendleton to be known as the "Wheat Bin." They needed money and equipment. After the first four months, JRM Properties quit making the $600 monthly payments on the partnership purchase. Matt Shawcross offered Linda Shawcross the sum of $5,000 and

---

[1] The five separate conditions of probation are set forth verbatim in the SANCTION portion of this opinion, *post* at 300 Or at 102.

enough equipment from the Pendair Inn to set up and operate the Wheat Bin. The catch was that Matt Shawcross did not have the necessary $5,000. Dr. Pfeiffer agreed to loan the $5,000 and Matt Shawcross agreed to "guarantee" its repayment.

On or about December 10, 1982, Linda Shawcross, Dr. Pfeiffer, and Millie Shade employed Vaile to form a corporation to be known as SPS Properties, Inc., to operate the Wheat Bin. Dr. Pfeiffer advanced to Vaile the sum of $450 for costs to be incurred and fees to be earned. Vaile deposited the money in his personal checking account.

On or about December 31, 1982, Vaile prepared and JRM Properties and Linda Shawcross executed a new agreement. It provided that Linda Shawcross release JRM Properties from all claims under the sale of the "Pendair Inn Partnership agreement signed July 2, 1982." It further provided:

> "JRM Properties Incorporation in exchange for Linda Shawcross's release listed above, does hereby agrees [sic] to pay Linda Shawcross the sum of $316.65 per month on the first of each month for eighteen (18) months beginning January 1, 1983 and termination [sic] on June 1, 1984."[2]

Around the first of February 1983, a representative of JRM Properties called Linda Shawcross and told her the corporation was not going to make any more monthly payments. Linda Shawcross called Vaile and received what she considered to be an unsatisfactory answer. She then employed two other lawyers, one to represent her personally and one to complete the incorporation of SPS Properties, Inc.

Prior to February 7, 1983, a sign company had sued

---

[2] The record is not entirely clear, but it appears that Dr. Pfeiffer borrowed $5,000 from the Bank of Eastern Oregon and then loaned it to Linda Shawcross. Matt Shawcross then "guaranteed" the repayment of the $5,000 by having JRM Properties execute the December 31, 1982, agreement requiring it to pay Linda Shawcross the sum of $316.65 each month for 18 months.

$316.65 × 18 equals $5,699.70—not $5,000. There is evidence in the record from which it could be inferred that the payment schedule was made to coincide with Dr. Pfeiffer's repayment of the $5,000 plus interest to the bank.

Although the December 31, 1982, agreement does not contain a provision for the transfer of equipment from the Pendair Inn, Linda Shawcross testified that she did in fact receive most of the equipment that was needed to start the Wheat Bin.

"A. James Shawcross and Linda J. Shawcross, dba Pendair Inn" in Marion County for the balance due on a rental agreement. On February 15, 1983, the circuit court signed a judgment which in part recited:

"The Court determined that Craig Vaile, the attorney on behalf of the Defendants, had advised the office of [plaintiff's attorneys] on February 7, 1983, that neither he nor his clients would appear for trial."

A default judgment was entered against the defendants for over $12,000 together with costs and disbursements. Linda Shawcross would later contend under the third cause of complaint that the judgment was entered without her knowledge or consent.

The new lawyers who were employed by Linda Shawcross demanded, on three different occasions, that Vaile account to the corporation for the $450 paid to him by Dr. Pfeiffer. Vaile did not respond. Finally, on June 12, 1984, Dr. Pfeiffer went to Vaile's law office and showed him a statement from one of the new lawyers in the amount of $350 for the completion of the legal work necessary for the incorporation. On that date Vaile paid to SPS Properties, Inc. the sum of $350 out of his clients' trust account.

## FIRST CAUSE OF COMPLAINT

The gravamen of this cause of complaint is that Vaile, at the time he prepared the agreement of December 31, 1982, between Linda Shawcross and JRM Properties, Inc., was representing multiple clients without the necessary disclosure and consent in violation of:

"DR 5-105 Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be

adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Vaile did not file an answer to the Bar's complaint. On the day of the hearing before the Trial Panel, the Bar moved for an order of default. The motion was denied. Vaile testified at the hearing. He admitted that at the time he prepared the agreement of December 31, 1982, he had an ongoing attorney-client relationship with Linda Shawcross because of his employment to form SPS Properties, Inc. When asked if he advised Linda Shawcross that "her interest might need independent review" by another counsel, he replied: "No, I did not specifically say that. But she understood that."

Vaile went on to elaborate that on a previous occasion in June 1982, she had taken an agreement he had prepared to another lawyer for review. He concluded:

"The lady had been in business with Pendair Inn and other establishments. She is not a real naive person. She knows about business transactions. And she knew she had the right to have this reviewed by separate counsel if she chose to do so."

Vaile's chief defense to this cause of complaint seems to be that he did not establish a "confidential client-attorney relationship" with Linda Shawcross. He argues that she never consulted him or asked: "Is this a good deal? Should I do this? Are my rights protected?" He states that if she had asked those questions, he would have answered: "I'm representing JRM Properties. I can't give you advice." Vaile futher argues that Linda Shawcross knew all along that he represented JRM Properties.[3]

---

[3] On direct examination Linda Shawcross was asked about the agreement of July 2, 1982, wherein she agreed to sell her "one-half interest in the Pendair Inn Partnership" to JRM Properties for $25,000:

"Q. Did Mr. Vaile at the time that that agreement was executed, was he representing your interests or the interests of JRM Properties, Inc., if you know?

"A. I don't know. I know he didn't represent me."

 This cause involves a conflict of interest "generated by the lawyer's simultaneous representation of two current clients." *In re Brandsness,* 299 Or 420, 425, 702 P2d 1098 (1985). It is established that on Decemer 31, 1982, there was an ongoing attorney-client relationship between Vaile and JRM Properties. Linda Shawcross was also a current client. Vaile could not by his subjective or secret analysis eliminate her as a current client and decide that he was only representing JRM Properties on that particular transaction. Although it is clear that at a prior time Vaile did not represent Linda Shawcross, she had recently become his client and she was entitled to presume that he would protect her interest. JRM Properties and Linda Shawcross were in adverse positions. Vaile should not have accepted or continued the employment to draw the agreement because the exercise of his independent professional judgment on behalf of Linda Shawcross was likely to be adversely affected by his representation of JRM Properties, or vice versa. DR 5-105 (A) and (B).[4]

We find Vaile guilty of the first cause of complaint.

## SECOND CAUSE OF COMPLAINT

In this cause of complaint, the Bar alleged that Vaile's conduct in depositing the advance of $450 for costs and fees to be earned[5] in connection with the incoporation of SPS Properties in his personal checking account instead of in a clients' trust account and his failure to promptly give a refund or accounting for the unearned portion of the fee was in violation of:

---

[4] Although the Bar alleged that Vaile violated DR 5-105(C), that rule does not apply. For attorneys who meet its requirements, DR 5-105(C) is a "safe-harbor" from sanctions for conduct which would otherwise violate DR 5-105(A) or (B). Failure to meet the requirements of DR 5-105(C) does not result in an independent violation of that provision in the sense that an independent sanction may be imposed under DR 5-105(C). It merely leaves the underlying violation of DR 5-105(A) or (B) unexcused. Any resulting sanction is for violation of either or both of those provisions. *See In re Renn,* 299 Or 559, 564, n 2, 704 P2d 109 (1985); *In re Brandsness,* 299 Or 420, 424, n 3, 702 P2d 1098 (1985).

[5] An advance from a client to a lawyer for costs and fees to be earned is not to be confused with a "retainer fee." Black's Law Dictionary, 1183 (5th Ed 1979) defines "retainer":

"Act of the client in employing his attorney or counsel, and also denotes the fee which the client pays when he retains the attorney to act for him, and thereby prevents him from acting for his adversary."

"DR 9-102 Preserving Identity of Funds and Property of a Client.

"(A) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable trust accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay account charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

"* * * * *

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Vaile did not file an answer to this cause of complaint. He testified that he deposited the $450 fee in his personal account because it was his practice to keep approximately $500 of his own funds in the clients' trust account and that money was always available if a client wanted a refund of a fee previously paid. He points out that the refund in this case was in fact made from his clients' trust account. Vaile testified that initially he did not respond to the requests for an accounting or refund of the unearned portion of the advanced fee because the requests did not specify an amount. He also

points out that when Dr. Pfeiffer made a demand for $350, he promptly paid it.

This cause of complaint requires no "in depth analysis." It is clear that Vaile has violated DR 9-102(A). By refunding the sum of $350, Vaile has admitted that the fee was not earned when it was received. The plain wording of DR 9-102(A)(2) required him to deposit it in his clients' trust account and not withdraw it until it was earned.

The money in question was paid by Dr. Pfeiffer on December 10, 1982. The record indicates that thereafter Vaile received three letters from attorneys representing either Linda Shawcross or SPS Properties demanding a return of the unearned portion of the fee. The Bar's formal complaint alleges that these letters were dated March 31, April 26 and December 7, 1983. By failing to answer the complaint, Vaile in effect has admitted these dates. The refund in the amount of $350 was not paid to SPS Properties until June 12, 1984. A period of 19 months had elapsed between the date of the payment of the advanced fee and the refund of the unearned portion. The burden was upon Vaile and not the clients to determine the amount of unearned fee. Only Vaile would have a record of the cash advanced and the time spent working on the incorporation. Vaile violated the clear language of DR 9-102(B)(3) and (4).

We find Vaile guilty of the second cause of complaint.

## THIRD CAUSE OF COMPLAINT

In this cause of complaint, the Bar alleged that Vaile's conduct in failing to advise Linda Shawcross that an action had been filed against her in Marion County by a sign company and by allowing a default judgment to be taken against her violated:

"DR 7-101 Representing a Client Zealously.

"(A) A lawyer shall not intentionally:

"(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however,

by acceding to reasonable requests of opposing cousel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

"\* \* \* \* \*

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

"(B) In his representation of a client, a lawyer may:

"(1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client."

The Trial Panel found that Vaile's conduct under this cause, "although negligent," was not intentional and therefore found him not guilty.

Vaile testified that the Marion County action was against Jim Shawcross and Linda Shawcross dba Pendair Inn for the balance due on the rental of a sign. Jim Shawcross was personally served with summons. Linda Shawcross was served by substituted service. The Shawcrosses were first represented by a lawyer in Eugene. Later Jim Shawcross asked Vaile to take over the case. Vaile examined the lease and found it to be "iron clad" and determined there was "absolutely no defense" to the action.

Under our obligation to "consider each matter de novo upon the record,"[6] we hold that Vaile's conduct under this cause of complaint was not intentional. This does not mean that we approve of the conduct. Vaile should have consulted with Linda Shawcross and received her consent to allow the entry of the default, even if the "ship was sinking."[7] We find that the conduct was negligent but not intentional.

---

[6] Rule 10.6 of the Rules of Procedure.

[7] In February 1983, when the default judgment was entered, Linda Shawcross's marriage to Jim Shawcross had been dissolved. Vaile was not entitled to presume that Linda Shawcross was receiving constructive notice from her ex-husband or was giving consent through him.

The Bar does not charge Vaile with negligent conduct. We find him not guilty of this cause of complaint.

## FOURTH CAUSE OF COMPLAINT

In this cause of complaint, the Bar has alleged that Vaile's failure to respond to letters of inquiry by the Bar's General Counsel's Office concerning the matters involved in the first three causes of complaint violated:

"DR 1-103 Disclosure of Information to Authorities:

"\* \* \* \* \*

"(C) A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of the general counsel, the local professional responsibility committees, the state professional responsibility board, and the board of governors as requested, subject only to the exercise of any applicable right or privilege."

The following facts are undisputed. On October 13, 1983, the Oregon State Bar General Counsel's Office wrote to Vaile concerning a complaint that it had received about his representation of Linda Shawcross. Vaile was given until November 14, 1983, to answer. He did not respond. On November 15, 1983, the General Counsel's Office again wrote to Vaile. The letter contained a statement that Vaile "should be aware that DR 1-103(C) establishes an affirmative ethical obligation on members of the Bar to cooperate with disciplinary investigations conducted by the Oregon State Bar." Again he did not respond.

Vaile admitted he received the above letters. His only reason for not answering them is that about the same time he was contacted by the local Professional Responsibility Committee about a hearing on the same matters. He testified:

"I assumed at that hearing when I presented evidence in that matter, that that would be the response to the Bar. I wasn't fully aware that I was supposed to make a written response prior to this."

The Bar points out that the matter was not referred to the local committee until December 1983.

We find Vaile guilty of the fourth cause of complaint.

## SANCTION

■ We have agreed with the Trial Panel that Vaile is guilty of the first, second and fourth causes of complaint. We also agree that he is not guilty of the third cause. This brings us to the sanction—the most difficult question in this case.

The Trial Panel made the following disposition:

"That Craig A. Vaile be suspended for a period of one (1) year but that the execution of said suspension be stayed and that Craig A. Vaile be placed on probation for a period of three (3) years and that the conditions be as follows:

"1. That Mr. Vaile be suspended from the practice of law for a period of sixty (60) days and that during said sixty day suspension, Mr. Vaile shall be required to take and successfully pass the Oregon State Bar Professional Responsibility Examination and that if said examination is not successfully completed and passed by Mr. Vaile within the said sixty days that the suspension continue until such time as Mr. Vaile has done so.

"2. That Mr. Vaile be required to seek counsel and training concerning appropriate office accounting procedure and that he demonstrate to the Bar's satisfaction during the period of the sixty day suspension that he has devised an appropriate office accounting procedure for the preservation and protection of a client's trust fund.

"3. That Mr. Vaile establish a relationship with a more senior member of the Bar in his geographic area in order to seek counsel or obtain, through payment of fees or otherwise to said counsel, answers to questions relating to professional responsibility or office practice procedure.

"4. That Mr. Vaile maintain close contact with the Oregon State Bar and respond promptly to any inquiries or requests by General Counsel or other members of the Bar Staff.

"5. That the period of probation be supervised by a person or persons appointed by the Oregon State Bar and that Mr. Vaile cooperate with the probation supervisor, including any requests made by such supervisor that Mr. Vaile seek psychological or psychiatric counseling."

Recently, in the cases of *In re Moore,* 299 Or 496, 509, 703 P2d 961 (1985), and *In re O'Byrne,* 298 Or 535, 550, 694 P2d 955 (1985), we reviewed cases involving the sanctions in

"conflicts of interest" cases, particularly for violations of DR 5-101(A), DR 5-104(A) and DR 5-105.[8]

Our conclusion was that this court has drawn a line between (1) cases in which the lawyer was guilty only of a conflict of interest, and (2) cases in which the conflict has been aggravated by fraud, dishonesty or misappropriation of funds. We further noted that in the former class of cases the sanctions have been a public reprimand or suspension for less than one year. In the latter class of cases the suspensions have exceeded one year and in one case resulted in disbarment. *In re Moore, supra,* 299 Or at 510.

A further look at the cases we examined in *Moore* and *O'Byrne* shows that of the 24 cases reviewed the sanction in 13 of them was public reprimand. All 13 cases involved a violation of DR 5-105. If *Moore* and *O'Byrne* are added to the list, increasing it to 26 cases, then we have given public reprimands in 50 percent of the conflict of interest cases. In the eight cases where the suspension has been less than one year, the average length of suspension is 3.25 months.[9]

If we had found Vaile guilty of violating only DR 5-105, then it is probable that he would have received a public reprimand or a suspension of 30 days. Our next step is to determine if Vaile's violation of DR 9-102(A), (B)(3) and (B)(4) involved fraud, dishonesty or misappropriation of funds. It is inexcusable that a client would have to wait for over a year to obtain a $350 refund on an unearned fee. This is aggravated by the fact that other lawyers wrote to Vaile three different times demanding an accounting or refund. Even so, we do not infer from the record that Vaile intended to convert the money to his own use. *In re Sassor,* 299 Or 720, 724, 705 P2d 736 (1985). The funds were commingled but not converted. The conduct was a callous and reckless act, but it does not reach the level of fraud or dishonesty.

It is hard to explain Vaile's failure to reply to the Bar's inquiries which resulted in his violation of DR 1-103(C).

---

[8] We also referred to *In re Boyer,* 295 Or 624, 669 P2d 326 (1983), which contains a comprehensive list of the sanctions in the same type of cases.

[9] The list of cases examined in *In re Moore,* 299 Or 496, 509, 703 P2d 961 (1985), and *In re O'Byrne,* 298 Or 535, 550, 694 P2d 955 (1985), was taken from Shepard's Professional and Judicial Conduct Citations.

This is particularly true when the last letter from the Bar warned him that his failure to respond could be considered a violation of that Disciplinary Rule. The only other cases that we can find involving a violation of DR 1-103(C) are *In re Dugger,* 299 Or 21, 697 P2d 973 (1985) and *In re Paauwe,* 298 Or 215, 691 P2d 97 (1984). In *Paauwe,* the lawyer was also found guilty of DR 6-101(A)(3) (neglecting a legal matter entrusted to him). He was suspended for a period of 63 days and placed on probation for three years because of previous alcohol problems.

There are some things to be said in Vaile's favor. He is a sole practitioner with limited civil experience. We do not know his age, but he received his undergraduate degree in 1969. He then spent five years in the military service. Thereafter, he attended law school and was admitted to the Oregon State Bar in 1977. He worked as a deputy district attorney and as a public defender. He went into private practice in 1981.

Vaile's attitude before the Trial Panel was not arrogant. He said he felt bad about what happened to Linda Shawcross. He considered it his responsibility to advise JRM Properties on legal matters, but he could not make them pay their obligations. The indication is that he did not see the conflict of interest coming and he "found himself slipping into" it. Vaile told the panel that he "would be perfectly willing" to follow its recommendation and "fulfill an ethics class and some accounting advice."

Previously this court has been reluctant to impose general probation as a sanction in disciplinary cases. In the case of *In re Scannell,* 289 Or 699, 703, 617 P2d 256 (1980), we said:

> "We have not often found 'probation' to be a practical disciplinary sanction, because neither the Court nor the Bar has effective machinery for supervising stringent conditions, and without conditions and supervision 'probation' is largely meaningless."

However, this court has recognized that limited probation for specific purposes should be considered as a sanction option. In *In re Scannell, supra,* the lawyer was placed on probation for a period of two years on the condition that he not engage in the representation of private clients. In *In re*

*Paauwe, supra,* the terms of probation were related specifically to the use of alcohol. In *In re Holman,* 297 Or 36, 69, 682 P2d 243 (1984), the terms of probation were related to the use of drugs.

Now the Rules of Procedure approved by this court on February 9, 1984, set out the authority and the terms under which the Trial Panel may place a lawyer on probation. *See* Rule 6.2(a).[10] Although the Trial Panel was within its authority in granting and setting the terms of probation, we hold that a more limited probation is appropriate in this case.

We order that Vaile be suspended from the practice of law for a period of 60 days, and that he be placed on probation for the following limited purposes:

(1) That he seek counsel and training concerning appropriate office accounting procedures and that he demonstrate to the Bar's satisfaction during the period of the 60-day suspension that he has devised an appropriate office accounting procedure for the preservation and protection of a clients' trust fund.

(2) That after Vaile has received 90 days' notice from the Bar of the next Oregon State Bar Professional Responsibility Examination he shall take and successfully pass that examination.

Upon the successful completion of these two conditions, Vaile's probation shall be terminated. The state chairperson of the Disciplinary Board shall appoint some person to supervise these terms of probation. If Vaile fails to complete

---

[10] Rule 6.2(a) provides:

"*Authority in Disciplinary Proceedings.* Upon determining that an accused should be suspended, the trial panel may decide that the execution of the suspension shall be stayed, in whole or in part, and that the accused shall be placed on probation for a period no longer than three years. The imposition of a probationary term shall not affect the criteria established by statute and these rules for the review of decisions of trial panels by the Supreme Court. Probation, if ordered, may be under such conditions as the trial panel or the Supreme Court considers appropriate. Such conditions may include, but are not limited to, requiring alcohol or drug treatment; requiring medical care; requiring psychological or psychiatric care; requiring professional office practice or management counseling; and requiring periodic audits or reports. In any case where an attorney is placed on probation pursuant to this rule, the state chairperson of the Disciplinary Board or the Supreme Court may appoint a suitable person or persons to supervise the probation. Cooperation with a person or persons so appointed shall be a condition of the probation."

the terms of probation, then he will be subject to summary suspension. *In re Paauwe, supra,* 298 Or at 221. The Oregon State Bar to recover costs.