Argued and submitted November 6, accused disbarred December 27, 1985,
reconsideration denied February 19, 1986

In re Complaint as to the Conduct of

# LAWRENCE W. JORDAN,
*Accused.*

(OSB 83-124, 84-49; SC S31768)

712 P2d 97

Lawrence W. Jordan, Salem, argued the cause and filed the brief *pro se* for accused.

Dwight P. Billman, Salem, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

This is a disciplinary proceeding by the Oregon State Bar charging the accused, Lawrence W. Jordan, with six violations of the disciplinary rules arising out of Jordan's dealings in two separate situations. The first three charges stem from Jordan's representation of Mr. and Mrs. Roy Horstman, debtors of Evergreen Collections, Inc. (Evergreen). Jordan was part owner of Evergreen and represented Evergreen in collections. The Bar charged that the accused violated DR 4-101(B)(2) and (3) by revealing a client's secrets, DR 5-105(A) by accepting proffered employment that would or would likely impair his independent professional judgment, and DR 5-105(B) and (C) by continuing employment that would or would likely impair his independent professional judgment. The Trial Panel found the accused not guilty of violating DR 4-101(B)(2) and (3) and 5-105(A), and guilty of violating DR 5-105(B) and (C).

The Bar's other three charges of violations stem from Jordan's handling of the estate of Gordon Felland. The Bar charged Jordan with violating DR 6-101(A)(3) by neglecting a legal matter entrusted to him, DR 1-102(A)(4) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and DR 9-102(A) by failing to preserve the identity of a client's funds. The Trial Panel found the accused guilty of the three charges in connection with the Felland estate.

The Trial Panel recommended that the accused be suspended for three years, complete a legal ethics course and pass the legal ethics portion of the Oregon State Bar Examination. He was also ordered to pay $841.85 to Mr. and Mrs. Horstman as reimbursement for penalties and attorney fees.

We first discuss the accused's representation of the Horstmans. We find:

In January 1983, Jordan agreed to represent Mr. and Mrs. Horstman. He was to arrange a payment schedule with the Horstmans' creditors to avoid garnishment of Mr. Horstman's wages. He arranged the payment schedule and secured a wage assignment from Mr. Horstman. From February to April 1983 he disbursed proceeds from Mr. Horstman's wages to the creditors.

Three claims for nonsufficient funds (NSF) checks

had been assigned by the Horstmans' creditors to Evergreen for collection. The claims for the NSF checks included potential liability for penalties and attorney fees. The accused did not advise the Horstmans that the debts for the NSF checks should be satisfied before other debts to limit potential liability for penalties and attorney fees.

On April 8, 1983, Mrs. Horstman wrote to the accused complaining about the calculation of his attorney fees. The Horstmans had become delinquent in their payments of his attorney fees. Mrs. Horstman did not state that she intended to sever her attorney/client relationship with the accused and she and her husband continued to believe that he represented them when, on July 12, 1983, they were served with a summons and complaint from Evergreen.

At the same time the accused represented the Horstmans, he also represented Evergreen. Jordan performed the legal work to incorporate Evergreen and was the secretary and 35 percent owner of the corporation. Jordan was the only attorney who represented Evergreen in collection matters. Jordan told the Horstmans that he was part owner of a collection agency, but he never specifically advised them that he represented Evergreen or that the interests of the parties conflicted.

The accused filed an action on behalf of Evergreen against the Horstmans for the creditors' NSF check claims that had been assigned to Evergreen, as well as for his own assigned claim for attorney fees for representing the Horstmans. Mrs. Horstman thereafter wrote two letters to the accused, asking him how he could file an action against the Horstmans for Evergreen when he was still representing the Horstmans in the same matter. The accused did not respond.

On August 25, 1983, the accused obtained an order of default and judgment against the Horstmans for $1,167.50, which represented not only the original obligations but also penalties on the NSF checks and further costs of $103.10. Mrs. Horstman thereafter agreed with the accused to make monthly payments on the judgment. On October 21, 1983, the accused obtained an amended order of default and judgment against the Horstmans which included $450 in attorney fees for representing Evergreen on the collection of the checks. The Horstmans paid the accused $20 on both September 6 and

October 20, and $25 on November 21, 1983. On November 18, 1983, Jordan garnished Mr. Horstman's wages on this judgment.

The accused was charged with violating DR 4-101(B)(2) and (3), 5-105(A), and 5-105(B) and (C), because of his dealings with the Horstmans. The Trial Panel found the accused not guilty of violating DR 4-101(B)(2) and (3), which provides:

"(B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:

* * * * *

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure."

The Trial Panel found that "the evidence does not establish that the Accused used any information he obtained from the Horstmans for his or a third party's advantage." We disagree with this finding. The accused learned through his professional relationship with the Horstmans that Mr. Horstman worked out of town in Albany, and the accused knew when he was paid and by whom. He even made a special note in his file on April 26, 1983, that "I believe today is Mr. Horstman's pay day." He used this specific knowledge to garnish Mr. Horstman's wages. This information likely would not have been otherwise available to Evergreen. The accused is guilty of violating DR 4-101(B)(2) and (3).[1]

The Trial Panel also found the accused not guilty of violating DR 5-105(A), which provides:

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of

---

[1] The exception in DR 4-101(C)(4), which allows a lawyer to reveal confidences "necessary to establish or collect his fee," does not apply because he was garnishing on behalf of two creditors and it was only coincidental that his own claim for attorney fees was joined in this garnishment. DR 4-101(C)(4) reads:

"A lawyer may reveal:

* * * * *

(4) Confidences or secrets necessary to establish or collect his fee * * *."

a client will be or is likely to be adversely affected by the acceptance of the proffered employment except to the extent permitted under DR 5-105(C)."

The Trial Panel found that "[t]he evidence supports the Accused's position that he accepted the employment by the Horstmans before he knew that several of the creditors had assigned their claims to Evergreen." We agree and find the accused not guilty of violating DR 5-105(A).

The Trial Panel did find that the accused violated DR 5-105(B) and (C), which provides:

"(B)   A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C)   In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Because the accused was an officer, a part owner and the counsel for Evergreen, assignee of the Horstmans' creditors, a conflict of interest resulted from the accused's attempt to represent adverse interests. The accused's statement that he was only the secretary of Evergreen was not credible. He misled the Bar's counsel by representing to the Bar that he was only a secretary in the Evergreen corporation when he was in fact a 35 percent owner. He acknowledged that his answer to the Bar's counsel was incorrect during his cross-examination before the Trial Panel:

"Q   Do you recall my question: 'Do you have any interest, ownership interest or are you a principal in any way?'

And you answer:   'I am the secretary of the corporation.'

Question:   'Is there compensation as secretary?'

Answer:   'No.'

'Or control interest, other than as an officer?'

Answer:   'No; right.'

Do you remember that?

"A  I don't remember that, but I remember you asking about that. And I — that's obviously incorrect. We have never issued the stock, let's say that. [The 65 percent owner] and I had agreed I would take percentage of the stock. He would always have a majority interest, but we had not issued the stock or he had not issued.

"Q  Is it a viable corporation without an issuance of stock?

"A  As far as — Well —"

■  We find that the accused represented Evergreen from the outset of its formation and that he neither disclosed his dual representation nor obtained the consent of his clients to represent dual interests. More importantly, consent would not cure the conflict of interest by disclosure. No amount of disclosure could cure the actual conflict of the accused in trying to collect a debt for Evergreen while at the same time attempting to protect the Horstmans from that creditor. The accused was in such an actual conflict of interest as to render consent irrelevant. *See In re Jans,* 295 Or 289, 295, 666 P2d 830 (1983) ("It is never proper for a lawyer to represent clients with conflicting interests no matter how carefully and thoroughly the lawyer discloses the possible effect and obtains consent."). Therefore we find that the accused violated DR 5-105(B), and that DR 5-105(C) is unavailable to the accused. The Bar should not charge a violation of DR 5-105(C). *See In re Johnson,* 300 Or 52, 58-59, 707 P2d 573 (1985); *In re Brandsness,* 299 Or 420, 425, 702 P2d 1098 (1985); and *In re Vaile,* 300 Or 91, 707 P2d 52 (1985). In *Vaile,* we noted:

"Although the Bar alleged that Vaile violated DR 5-105(C), that rule does not apply. For attorneys who meet its requirements, DR 5-105(C) is a 'safe-harbor' from sanctions for conduct which would otherwise violate DR 5-105(A) or (B). Failure to meet the requirements of DR 5-105(C) does not result in an independent violation of that provision in the sense that an independent sanction may be imposed under DR 5-105(C). It merely leaves the underlying violation of DR 5-105(A) or (B) unexcused. Any resulting sanction is for violation of either or both of those provisions. *See In re Renn,* 299 Or 559, 564, n 2, 704 P2d 109 (1985); *In re Brandsness,* 299 Or 420, 424, n 3, 702 P2d 1098 (1985)." 300 Or at 97 n 4.

We now turn to the accused's representation of the

estate of Gordon Felland, for which the accused was charged with violating DR 6-101(A)(3) by neglecting a legal matter entrusted to him, DR 9-102(A) by failing to preserve the identity of a client's funds, and DR 1-102(A)(4) by conduct involving dishonesty, fraud, deceit or misrepresentation.

After Gordon Felland died intestate on February 25, 1982, his sister, Margaret Miller, retained the accused to handle the Felland estate (a small estate under ORS 114.505 to 114.555). The estate's only valuable assets were a 1981 Subaru automobile and an unused premium refund from an automobile insurance policy. The accused filed an Affidavit of Claiming Successor in the Marion County Probate Department for the estate on March 25, 1982.

On April 19, 1982, the Adult and Family Services Division (AFSD) filed a claim against the Felland estate for $2,336.20. In July 1982 the Subaru was sold for $3,600. The accused deposited the sale proceeds, with $400 from the insurance premium refund, in his clients' trust account on July 15, 1982. The accused did not advise AFSD of the sale of the car until January 30, 1983. Several other creditors who had claims against the estate telephoned Ms. Miller and were referred to Jordan. Ms. Miller telephoned and wrote to the accused on several occasions regarding the status of the estate without receiving any response.

In April 1983, Jordan told AFSD that the Final Accounting would be completed shortly. On July 6 and August 8, 1983, the AFSD representative wrote to the accused asking when the estate would be closed. The accused did not respond to either letter.

During the months after August 1982, the balance in the accused's clients' trust account was less than $4,000 except for November 1982. Jordan admitted that he had used $2,000 from the trust account for his own use. In July 1983, the accused wrote a $225 check to himself for attorney fees charged against the estate from the clients' trust account, even though the account contained only $1,210.88 as of June 30, 1983. He said he wrote the check "[p]robably to meet my rent payment or something."

In December 1983, the AFSD representative wrote to the presiding judge, who, on January 30, 1984, responded that

he had talked with Jordan and was promised that Jordan would finish administration of the estate promptly.

On February 6, 1984, the AFSD representative filed a complaint with the Oregon State Bar concerning the accused's delay in closing the Felland estate. On February 7, 1984, the Oregon State Bar wrote to the accused requesting a response to the complaint. On February 17, 1984, the Final Accounting of the Felland estate was filed. On February 27, Jordan delivered a check for $1,935.71 to AFSD as satisfaction of its claim. On March 2, Jordan represented to the Oregon State Bar that the estate had been closed some weeks prior and the funds available had been distributed to AFSD.

The Trial Panel found the accused guilty of violating DR 6-101(A)(3), which provides:

"(A)    A lawyer shall not:

* * * * *

(3)    Neglect a legal matter entrusted to him."

The accused had marshalled the estate's assets by July 1982, and should have closed the estate within four to six months. Instead, he ignored repeated telephone calls and letters from interested parties. He did not close the estate until February 1984, after prompting by the presiding judge and notice of a complaint filed with the Oregon State Bar. The accused failed to close the estate mainly because his trust account did not contain sufficient funds to satisfy the amounts deposited for the estate. Jordan admitted that he had neglected the estate because of a shortage in his trust account. He testified that

"* * * when [the AFSD representative] came and said, you know, where is the money for AFS and I got the bank statement and looked at it, I realized that I had borrowed money that was not mine. I had taken money out of the trust account that was not properly attributable to the firm. So at that time I was in a definite situation.

"My father said he would send me more money to cover that; he never did. So the result was that I did not have the money for several months to pay off and settle the Felland estate."

Jordan then blamed a computer for his delay:

"But I do acknowledge on the Felland Estate, I should

have closed it out sooner, but I let myself get into the situation that the computer would do miracles and handle everything and it didn't. And I really got into a cash bind because nothing was getting billed out for approximately six months while that computer just took in the numbers and wouldn't put anything back out."

In spite of his protestations of mistakes and accounting problems, the fact remains that his trust account still lacked funds to cover his clients' accounts and prevented him from closing the estate. He was clearly guilty of neglecting a legal matter entrusted to him.

The Trial Panel found the accused guilty of violating DR 1-102(A)(4), which provides:

"(A) A lawyer shall not:

\* \* \* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The accused withdrew money from his trust account belonging to his clients and used it for his own purposes. He admitted this in testimony before the Trial Panel:

"Then from January to April, I didn't have anyone in the office except myself. I didn't have a secretary at that time. And I borrowed some money from my father, which he deposited in the trust account, which is a mistake. \* \* \* What happened was that I anticipated that money [from my father] and I had written a check from the trust account to the firm account to cover some expenses. \* \* \*"

From our review of the record, we conclude that the accused knew that when he withdrew the funds they were not his. Further, after admitting he withdrew trust funds for his own use, he failed to return the money for several months. By doing so he engaged in dishonest conduct in violation of DR 1-102(A)(4).

Finally, the Trial Panel found the accused guilty of violating DR 9-102(A), which provides:

"(A) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable trust accounts maintained in the

state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1)   Funds reasonably sufficient to pay account charges may be deposited therein.

(2)   Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

The accused received $4,000 in July 1982 for the Felland estate. He deposited the $4,000 into his clients' trust account. Afterwards, he admitted he withdrew from that account at least $2,000 which he applied to his personal use. Further, as previously mentioned, he commingled money he borrowed from his father with his trust account. The accused not only commingled personal funds with clients' funds, but converted clients' funds to his own use. We find the accused guilty of violating DR 9-102(A).

The conduct of the accused, Lawrence Jordan, demonstrates that he has been not merely an ineffective and inefficient lawyer, but that he distorted facts to his clients, to the Oregon State Bar and to this court. He blames his troubles on a malfunctioning computer. Irrespective of computer error, the malfunctioning involved in this case was his own professional incompetency.

The accused acted unethically by engaging in a clear conflict of interest and by violating a client's trust. He neglected a legal matter entrusted to him. He not only commingled a client's funds, but also converted some of those funds to his own use. Finally, he compounded matters by misrepresenting the facts of his conduct to the Bar.

The accused is disbarred. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).