Argued and submitted November 6, 1991, accused suspended from the practice of law for 63 days from the effective date of this decision July 30, 1992

# In re Complaint as to the Conduct of

## William J. HEDGES,
*Accused*

## (OSB 89-54; SC S37893)

836 P2d 119

Arthur B. Knauss, Milwaukie, argued the cause and filed the petition for the accused.

Lia Saroyan, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the response for the Oregon State Bar.

PER CURIAM

## PER CURIAM

This is an automatic and *de novo* review of a lawyer disciplinary proceeding. ORS 9.536(1); BR 10.1; BR 10.6. The Oregon State Bar (Bar) has charged the accused with violations of five sections of the Code of Professional Responsibility: DR 6-101(B), neglect of a legal matter; DR 1-102(A)(3), misrepresentation; DR 9-101(B)(3) and (4), failure to maintain complete records of client funds and failure to pay funds in a lawyer's possession which the client is entitled to receive; and DR 1-103(C), failure to cooperate in an official investigation.

The trial panel found the accused guilty of all charges and recommended that he be suspended from the practice of law for 63 days. On review, the accused challenges the trial panel's findings of guilt in relation to the violations of DR 6-101(B) and DR 9-101(B)(3) and (4) and its recommended sanction. The Bar argues that the accused is guilty of all charged violations and argues for a longer suspension. The Bar has the burden of establishing ethical misconduct by clear and convincing evidence. BR 5.2. "Clear and convincing" means highly probable. *In re Johnson*, 300 Or 52, 55, 707 P2d 573 (1985). We affirm the trial panel's findings of guilt and impose a suspension of 63 days.

On August 15, 1988, Trudy and Michael Harmon retained the accused to represent them in a dispute with two individuals named Hayes and Potter, to whom the Harmons had sold a mobile home under contract. The Harmons also sought damages for any harm done to the mobile home. Hayes and Potter apparently had defaulted on the contract and were causing waste to the mobile home. The Harmons gave the accused $750 for his representation of them. The accused filed a complaint on the Harmons' behalf in the district court, naming as defendants Hayes, Potter and Richardson, the owner of the property where the mobile home was located. Thereafter, the accused effected service of process on the defendants.

During October and November of 1988, the accused negotiated with Richardson's lawyer. The accused agreed to dismiss the action against Richardson in return for Richardson's promise to waive a lien that he had on the mobile

home and for his permission to remove the mobile home from his property. Because it was a condition of the settlement, Richardson's lawyer asked the accused to file an order removing Richardson as a defendant. The accused never did.

On January 29, 1989, the district court issued a Notice and Judgment dismissing the Harmons' complaint for want of prosecution. The accused took no action thereafter to reinstate the complaint.

Between November 22, 1988, and March 3, 1989, the accused had no contact with the Harmons. On several occasions, both before and after the dismissal of the Harmons' complaint, Mrs. Harmon tried to contact the accused by telephone. He failed to return her calls.

On March 3, Mrs. Harmon contacted the accused and inquired as to the status of the case. He told her that he was unable to get in touch with Richardson's lawyer, and that Richardson had not responded to their settlement offer, and that nothing was happening in the case. The accused did not tell the Harmons that the complaint had been dismissed nor did he mention the circumstances of the dismissal. In fact, they learned of that fact only after the Bar commenced its investigation of their complaint against the accused. At the end of their March 3 conversation, Mrs. Harmon dismissed the accused as the Harmons' lawyer.

Also during their March 3 conversation, Mrs. Harmon requested an accounting of the fee that the Harmons had given to the accused. On March 13, she reiterated that request to the accused in writing. The accused did not comply with those requests at that time or ever. On March 15, 1989, the Harmons complained to the Bar about the accused's representation of them in the matter described. Their complaint forms the basis of this case.

It was not until 14 months after the Harmons filed their complaint with the Bar that the accused reimbursed the Harmons for the $750 that they had given him, plus an additional $100. Thereafter, the Harmons dealt directly with Richardson and were able to regain possession of their mobile home.

During the Bar's investigation of the Harmons' complaint, the Disciplinary Counsel's office sent four letters to the accused (dated March 28, 1989, April 19, 1989, May 22, 1989, and June 5, 1989), requesting information about the Harmons' complaint. On May 4, 1989, the accused contacted the Bar and requested a three-day extension to respond. The Bar granted that request. The accused nonetheless failed to respond to the Bar's requests for information.

The Bar thereafter filed its complaint against the accused. At the trial panel's hearing, the accused admitted most of the Bar's allegations. He testified that the Harmons' case was a matter that he had just put aside and could not bring himself to attend to. He testified, however, that he never considered the dismissal of the complaint as significant because the statute of limitations had not run and he could refile the complaint. The trial panel found the accused guilty of all charges and recommended a sanction of suspension from the practice of law for 63 days. Because the suspension is over 60 days, review in this court is automatic. ORS 9.536(1); BR 10.1.

*Neglect of a Legal Matter — DR 6-101(B)*

■      DR 6-101(B) provides: "A lawyer shall not neglect a legal matter entrusted to the lawyer."

The accused concedes that he neglected a legal matter entrusted to him in violation of DR 6-101(B). He argues, however, that his neglect caused the Harmons no harm and that, in fact, they benefited from his representation, because they were able to get their mobile home back primarily as a result of his negotiation with Richardson's lawyer. His argument, he states, is "submitted more in mitigation than in denial of the allegation of neglect." We find that the accused violated DR 6-101(B).

*Failure to Maintain Complete Records of Client Funds and Failure to Pay Funds in a Lawyer's Possession which the Client is Entitled to Receive — DR 9-101(B)(3) and (4)*

DR 9-101(B) provides in part:

"A lawyer shall:

"* * * * *

"(3)   Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the lawyer's client regarding them.

"(4)   Promptly pay or deliver to a client as requested by the client the funds * * * in the possession of the lawyer which the client is entitled to receive."

Both rules impose obligations on lawyers regarding *client* funds. *In re Howard*, 304 Or 193, 203-04, 743 P2d 719 (1987). Thus, as a threshold question in determining whether those rules were violated, it must be determined that the money given by the client to the lawyer belonged to the client and not to the lawyer. *Id.*

Here, the accused argues that there is not clear and convincing evidence that the money paid to him by the Harmons was not a non-refundable fixed fee. His argument, we infer, is that if the Harmons' payment was a non-refundable fixed fee, then he had no duty to account for those funds and no duty to return them. As with the previous violation, he states that his argument is "[i]n mitigation more than direct claim of error."

The record shows that the accused and the Harmons' oral agreement was that the accused required "a fee up front of $750 to be used towards doing all of this," *i.e.*, pursuing the action against Hayes and Potter. That type of agreement is a classic advance fee agreement where ownership of the money is unquestionably with the client until it is earned by the lawyer. Opinion of Committee on Legal Ethics, No. 509, (*citing* C. Wolfram, Modern Legal Ethics 506 (1986)).[1] After the accused received the $750 from the Harmons, he placed it in his client trust account. He admitted that, had it been a non-refundable fixed fee, he would have placed the money in his office account. There was no written agreement here that this fee would be a non-refundable fixed fee, and where such a fee arrangement is used "the designation of the fee as non-

---

[1] Legal Ethics Opinion No. 509 was approved by the Board of Governors in 1986. In 1991, a new book, *Oregon Formal Ethics Opinions* (Oregon CLE 1991), with new formal ethics opinions was published. At the same time, all prior formal opinions, published in the Oregon State Bar Professional Responsibility Manual, were withdrawn. A companion book, *The Ethical Oregon Lawyer* (Oregon CLE 1991) also was published in 1991. That book reviews the principal issues of legal ethics and professionalism likely to be of significance to Oregon lawyers.

refundable must be made by a clear and specific written agreement between client and lawyer." Opinion of Committee on Legal Ethics, No. 509, *supra*. We find that the $750 were *client* funds such that the accused's ethical obligations under DR 9-101(B)(3) and (4) were invoked.

There is no dispute that the Harmons requested an accounting of their funds, that the accused promised to provide one, and that he failed to. A lawyer who fails to render appropriate accounts to the lawyer's client regarding the client's funds in the lawyer's possession violates DR 9-101(B)(3). *In re Boothe*, 303 Or 643, 649, 740 P2d 785 (1987); *In re Bridges*, 302 Or 250, 253, 728 P2d 863 (1986). We find that the accused violated DR 9-101(B)(3).

■    The accused eventually did refund the Harmons' money. DR 9-101(B)(4), however, expressly requires that such an action, when appropriate, be done "promptly." The accused took 14 months to make the refund. That is not prompt. *See In re Chandler*, 303 Or 290, 295, 735 P2d 1220 (1987) (disciplining a lawyer under DR 9-101(B)(4) for taking just over 11 months to make a refund). We find that the accused violated DR 9-101(B)(4).

*Other Ethical Violations*

On review, the accused does not argue that he did not violate DR 1-102(A)(3), misrepresentation,[2] and DR 1-103(C), failure to cooperate.[3] We have reviewed the entire record and we find that the accused violated those rules.

*Sanction*

■    We turn now to the question of the appropriate sanction for the proven ethical misconduct. In that regard, we

---

[2] DR 1-102 provides in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[3] DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

look to the American Bar Association Standards for Imposing Lawyer Sanctions (1986) (ABA Standards) and prior precedent of this court for guidance. *In re Trukositz*, 312 Or 621, 634, 825 P2d 1369 (1992).

■ Under the ABA Standards, in determining the appropriate level of discipline, *e.g.*, admonishment, reprimand, suspension, or disbarment, we apply four factors: the ethical duty violated, the lawyer's mental state at the time of the violation, the harm incurred as a result of the lawyer's misconduct, and the existence of aggravating or mitigating factors. *In re Willer*, 303 Or 241, 250, 735 P2d 594 (1987).

■ The accused violated four duties that he owed to his clients: the duty to handle their legal matter diligently, the duty of candor, the duty to render to them an accounting of his time, and the duty to refund promptly any unearned money from the clients' advance fee. *See* ABA Standards, *supra*, at 5 (identifying duties owed to clients). Moreover, he violated a duty he owed to the legal profession: the duty to cooperate with the Bar's investigation. *See* ABA Standards, *supra*, at 5-6 (identifying duties owed to the legal profession).

The record reflects that the accused knowingly committed the charged disciplinary rule violations. The accused testified before the trial panel that "I knew what I was doing the whole time," that he knew that he should have informed the Harmons of the dismissal of their complaint, that he knew that he needed to provide the Harmons with an accounting, and that he knew that he needed to cooperate with the Bar. He testified: "[F]or some reason I set the file on my desk and stared at it on a daily basis and just did nothing. * * * [A]nd the same thing happened with the Bar complaint too."

As a result of the accused's misconduct, the Harmons suffered a loss of rental income from their mobile home and they were put to considerable inconvenience.

In mitigation, the accused, a member of the Oregon State Bar since 1981, has had no other complaints or charges against him. He presented credible evidence of general good character and good professional reputation in the local area in which he practices. He also offered his *pro bono* work as evidence of his good character.

In aggravation, the misconduct in this case occurred over a long period of time, beginning with the accused's failure to follow through on the negotiation with Richardson's lawyer and continuing until the trial panel's hearing, when it appears the accused finally cooperated in resolving the Harmons' complaint.

Oregon case law does not offer any precedent that deals with precisely the same charges that the accused faces in this matter. Some cases, however, are helpful. In *In re Kissling*, 303 Or 638, 740 P2d 179 (1987), this court imposed a 63-day suspension on a lawyer who violated DR 1-102(A)(3), DR 6-101(B), DR 7-101(A)(2) (intentional failure to carry out a contract of employment), and DR 7-102(A)(5) (making a false statement of law or fact). In *Kissling*, as in this case, the lawyer had no prior disciplinary record. *See also In re Dugger*, 299 Or 21, 697 P2d 973 (1985) (63-day suspension for violations of *former* DR 1-102(A)(4) (misrepresentation), DR 1-103(C), and *former* DR 6-101(A)(3) (neglect of a legal matter).

Considering all the ABA factors and this court's case law, we conclude that the trial panel's recommendation of a 63-day suspension is appropriate.

The accused is suspended from the practice of law for 63 days from the effective date of this decision. Costs to the Oregon State Bar.[4]

---

[4] This is the type of case in which this court may in the future consider following the procedure for affirmance described in BR 10.6. BR 10.6 provides that the Supreme Court shall consider each matter *de novo* upon the record and may adopt, modify, or reject the decision of the trial panel in whole or in part and thereupon enter an appropriate order. If this court's order adopts the decision of the trial panel without opinion, the opinion of the trial panel shall stand as a statement of the decision of this court in the matter but not as the opinion of this court.