Argued and submitted January 3, accused suspended from practice of law for 30 days, commencing 60 days from date of decision February 23, reconsideration denied March 27, 2007

In re Complaint as to the Conduct of

# EDWARD N. FADELEY,
*Accused.*

## (OSB 05-21; SC S53368)

153 P3d 682

Edward N. Fadeley, Creswell, argued the cause and filed the briefs for himself.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before De Muniz, Chief Justice, and Gillette, Balmer, Kistler, and Linder, Justices.*

PER CURIAM

---

* Durham and Walters, JJ., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged the accused with violating Oregon Code of Professional Responsibility Disciplinary Rule (DR) 9-101(A) (failure to deposit client funds in trust); DR 9-101(C)(3) (failure to render appropriate accounting of client funds); DR 2-106(A) (collecting clearly excessive fee); and DR 2-110(A)(3) (failure promptly to refund unearned fee).[1] A trial panel of the Disciplinary Board found that the accused had violated each of those rules and suspended him for 30 days. On *de novo* review, we affirm the trial panel's decision.

In late December 2003, while the accused was on vacation, he received a telephone call from Tidrick, who was considering divorcing her husband. The accused and Tidrick spoke several times. When the accused returned from his vacation, he met with Tidrick on December 31, 2003, to discuss the dissolution of her marriage and the disposition of a business that Tidrick and her husband owned. The accused told Tidrick that he usually charged $250 per hour but that he charged a slightly higher rate for work he did while on vacation, such as for the telephone conversations that he and Tidrick had had the week before. The accused also told Tidrick that he would not take her case unless she paid him $10,000. Tidrick wrote the accused a check for that amount, which the accused deposited into his personal checking account, not into a lawyer trust account.

The accused understood that the $10,000 payment was a nonrefundable minimum fee, earned upon receipt, and treated it as such. Tidrick understood that the $10,000 payment was a retainer; that is, Tidrick understood that the accused would work on her case for the hourly fee that he had described and would refund any unearned portion of the retainer. The accused never presented Tidrick with, and Tidrick never signed, a written fee agreement memorializing either understanding.

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue in this case occurred before that date, we apply the Oregon Code of Professional Responsibility.

Following their meeting, the accused began to work on Tidrick's case. On January 23, 2004, Tidrick sent the accused a letter terminating his representation of her and asking him to return the $10,000 retainer "less fees incurred." Tidrick also hired another lawyer to handle her divorce. That lawyer sent the accused a letter on February 9, 2004, repeating Tidrick's request for a refund. The accused responded that he considered the $10,000 nonrefundable. He stated, however, that he was willing to submit the matter to arbitration and asked Tidrick to tell him what sort of a refund she thought would be fair. The accused did not provide Tidrick with an accounting or give her any basis from which she could determine how much he owed her. Tidrick, for her part, did not agree to arbitration.

On September 23, 2004, Tidrick complained to the Bar regarding the accused's failure to refund the money that, in her view, he owed her. On March 31, 2005, the Bar filed a formal complaint against the accused, alleging the four violations set out above. After the Bar filed the complaint against him, the accused twice tendered $8,000 to the Bar to hold in escrow. The Bar declined to accept the tender. A trial panel held a hearing on the charges on December 7, 2005. On January 30, 2006, the trial panel found that the Bar had proved its allegations by clear and convincing evidence and concluded that the accused had violated all four disciplinary rules. The trial panel suspended the accused from the practice of law for 30 days, and the accused filed a request for review.

On review, the accused raises three arguments.[2] His initial argument concerns the composition of his trial panel. Bar Rule (BR) 2.4(a) provides that each trial panel "shall consist of 2 attorneys and 1 public member." The accused's trial panel consisted of an attorney, an "active emeritus" attorney, and a public member. An active emeritus attorney is a lawyer in good standing who has practiced law for the preceding 40

---

[2] The accused also makes two constitutional arguments. We decline to consider those arguments because neither is sufficiently developed for review. *See State v. Amaya*, 336 Or 616, 634 n 6, 89 P3d 1163 (2004) (declining to consider undeveloped constitutional argument).

years and who limits his or her professional activities to "providing pro bono legal services to indigent clients * * * or volunteer service on the * * * Disciplinary Board." Bar Bylaw § 6.101(c).[3]

The accused argues that an active emeritus attorney is not an "attorney" for the purposes of BR 2.4(a). Relying primarily on the definition of attorney in ORS 9.310, the accused contends that an attorney is a person who is authorized to engage in the general practice of law. The accused reasons that, because an active emeritus attorney can engage in only a restricted practice, an active emeritus attorney is not an "attorney" within the meaning of ORS 9.310 or BR 2.4(a). It follows, the accused concludes, that his trial panel did not consist of "2 attorneys and 1 public member," as BR 2.4(a) requires.

The difficulty with the accused's argument is that he looks to the wrong definition of attorney. We first identify the applicable definition of that term and explain why the accused's trial panel consisted of two attorneys, as BR 2.4(a) requires. We then discuss the two definitions of "attorney" on which the accused relies and explain why neither of those definitions applies.

BR 1.1(c) defines the term "attorney" as it is used in BR 2.4(a). BR 1.1(c) provides that, "[i]n these rules, [which include BR 2.4(a),] unless the context or subject matter requires otherwise: * * * 'Attorney' means a person who has been admitted to the practice of law in Oregon." That definition uses the present perfect tense, which generally refers to

---

[3] Bar Bylaw § 6.100(a) defines an active member of the Bar as "[a]ny member of the Bar admitted to practice law in the State of Oregon who is not an inactive or suspended member." It also provides that active members include active pro bono and active emeritus members. Bar Bylaw § 6.101(c) provides:

"The Active Emeritus category of active membership is available to lawyers in good standing: Who were admitted to practice law for the preceding 40 years; however, all 40 years of practice need not have been in Oregon; who limit their professional activities to providing pro bono legal services to indigent clients referred by pro bono programs certified under Section 13.2 of the Bar's Bylaws or volunteer service on the State Professional Responsibility Board or a Local Professional Responsibility Committee, the Disciplinary Board or as bar counsel; who do not engage in the private practice of law except as provided above and who obtain professional liability coverage through the Professional Liability Fund or the program referring the pro bono cases."

an action that occurred in the past and continues to the present. *See* John Eastwood, *Oxford Guide to English Grammar* 86 (1994) (explaining that "[t]he present perfect tells us about the past and about the present. We use it for an action in the period leading up to the present"). An active emeritus attorney qualifies as an "attorney" under BR 1.1(c). An active emeritus attorney is a person "who has been admitted to the practice of law" for at least 40 years and who presently is authorized to practice law, albeit for a limited class of clients (indigent clients) and with a specific fee arrangement (pro bono). It follows that, under the operative definition of "attorney," the accused's trial panel consisted of "2 attorneys," as BR 2.4(a) requires.

In arguing otherwise, the accused never discusses BR 1.1(c). Rather, he relies on the definition of attorney found in ORS 9.310, which provides:

> "An attorney is a person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof. An attorney, other than the one who represents the party in the written proceedings, may also represent a party in court, or before a judicial officer, in which case the attorney is known as counsel, and the authority of the attorney is limited to the matters that transpire in the court or before such officer at the time."

What is now codified as ORS 9.310 "was enacted in 1864 and was intended to more or less recognize and preserve the old common-law distinction between a counselor and an attorney at law." *See Lehman v. Knott*, 100 Or 240, 245, 187 P 1109 (1920) (explaining source of ORS 9.310). As the last part of ORS 9.310 suggests, the purpose of drawing a distinction between counselors and attorneys at law was to define the respective authority of those classes of lawyers. *See id.* at 245-46 (considering whether one of plaintiff's lawyers who had appeared at trial for a limited purpose had authority to accept service of the notice of appeal).[4] Unlike the definition of attorney in BR 1.1(c), which expressly applies to BR 2.4(a),

---

[4] Although the plaintiff in *Lehman* argued that a lawyer who had appeared at trial lacked authority to accept service of the notice of appeal, the court found that it did not need to decide that question because the lawyer who had accepted service had apparent authority to do so. 100 Or at 246.

the definition of attorney in ORS 9.310 was not intended to address the question of who may serve on a trial panel under BR 2.4(a).[5]

The accused also relies on BR 2.1(c). That rule defines who may represent an accused lawyer in a bar disciplinary proceeding. It provides that "[a]ny attorney admitted to practice law in Oregon may represent an accused unless the attorney" holds or has held one of seven positions within the Bar that could create a conflict of interest. BR 2.1(c). The rule on which the accused relies is inapposite. It does not define the word "attorney," either generally or for the purposes of BR 2.4(a). Rather, it identifies who may represent an accused lawyer in a disciplinary proceeding. The accused errs in arguing that an active emeritus attorney may not serve as one of the attorney members on a trial panel.

■ Having considered the accused's objection to the composition of the trial panel, we turn to his arguments on the merits of the charges against him. We begin with the charge that the accused violated DR 9-101(A), which requires a lawyer to deposit client funds in a lawyer trust account. On that issue, the accused contends that he and Tidrick entered into an oral agreement that the $10,000 fee was earned on receipt and was not refundable.[6] The accused reasons that, because he earned the $10,000 on receipt, he appropriately deposited it into his own bank account. As noted, Tidrick remembers their oral agreement differently.

We need not resolve that factual dispute to decide this case. Even if the accused and Tidrick orally agreed that the $10,000 minimum fee would be earned on receipt and not refundable, an oral agreement does not provide a sufficient

---

[5] We note that, even if ORS 9.310 applies to BR 2.4(a), an active emeritus attorney qualifies as an attorney under that definition. ORS 9.310 defines an attorney as a "person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof." An active emeritus attorney may represent a party in written proceedings, and the Bar Bylaws do not place any restriction on either the type or stage of the proceedings in which an active emeritus attorney may appear. Rather, the bylaws limit only the type of clients (indigent clients) whom an active emeritus attorney may represent and the fee arrangement (pro bono).

[6] The accused points out that he memorialized that oral agreement in his notes of their conversation. The accused's handwritten notes are dated "12-31" and include, among other things, the phrase "$10,000 min fee."

basis for a lawyer to treat a client's funds as if they were his or her own. *See In re Biggs*, 318 Or 281, 293, 864 P2d 1310 (1994) (so stating). As this court explained in *Biggs*,

> "Without a clear written agreement between a lawyer and a client that fees paid in advance constitute a non-refundable retainer earned on receipt, such funds must be considered client property and are, therefore, afforded the protections imposed by DR 9-101(A)."

*Id.; see also In re Balocca*, 342 Or 279, 287-88, 151 P3d 154 (2007) (following *Biggs*). Because there was no written fee agreement between Tidrick and the accused, the $10,000 remained Tidrick's property regardless of what she and the accused may have agreed orally. Under *Biggs* and *Balocca*, the accused violated DR 9-101(A) when he deposited the $10,000 fee into his personal checking account instead of a lawyer trust account.[7]

On January 23, 2004, Tidrick explicitly terminated the accused's representation of her and requested a refund of all unearned funds. The accused, however, has never provided her with an accounting.[8] DR 9-101(C)(3) required an accounting because, as explained above, the $10,000 remained Tidrick's property until earned by the accused. We conclude that the accused violated DR 9-101(C)(3). *See Balocca*, 342 Or at 290 (reaching similar conclusion in similar circumstances).

The trial panel also found that the accused violated DR 2-106(A) and DR 2-110(A)(3) when he failed to refund the unearned portion of the $10,000 fee that he collected from Tidrick. *See* DR 2-106(A) ("A lawyer shall not enter into an

---

[7] At oral argument, the accused argued that *Biggs* is no longer good law because that decision relied on *In re Hedges*, 313 Or 618, 836 P2d 119 (1992), which in turn relied on a legal ethics opinion that has been withdrawn. The accused's argument lacks merit for two reasons. First, in *Hedges*, the court looked to the legal ethics opinion for its persuasive value, not as if it were binding precedent. Second, although the specific ethics opinion was withdrawn, the Bar has adhered to the same reasoning in a different ethics opinion. *See* Oregon Formal Ethics Opinion 2005-151 (adhering to that reasoning).

[8] As described below, the accused created a reconstructed accounting of the time that he spent working on Tidrick's divorce in cooperation with the Bar's investigation of this case. The accused did not provide Tidrick with a copy of that accounting.

agreement for, charge or collect an illegal or clearly excessive fee."); DR 2-110(A)(3) (requiring "lawyer who withdraws from employment [to] refund promptly any part of a fee paid in advance that has not been earned"). On that issue, the accused does not contend that, if the $10,000 were a retainer, he earned all of it.[9] He relies instead on his argument that, under his oral agreement with Tidrick, the entire $10,000 was earned on receipt.

This court has held that a lawyer violates DR 2-106(A) "when he or she collects a nonrefundable fee, does not perform or complete the professional representation for which the fee was paid, but fails promptly to remit the unearned portion of the fee." *In re Gastineau*, 317 Or 545, 551, 857 P2d 136 (1993). The result is the same when, as here, a lawyer believes the fee to be nonrefundable but, because the client did not agree to that arrangement in writing, the fee actually is refundable. *See Balocca*, 342 Or at 291-92 (recognizing that proposition). The same conduct also constitutes a violation of DR 2-110(A)(3), which requires prompt repayment of unearned fees when the lawyer-client relationship ends. *Id.* at 292-93.

■   The final issue is the appropriate sanction for the accused's conduct. The trial panel suspended the accused from the practice of law for 30 days. The accused argues that, if he violated the four rules, a reprimand is sufficient. The Bar responds that the trial panel properly imposed a 30-day suspension but argues that we should order restitution as part of the sanction. In determining the appropriate sanction, we follow our well-established methodology. *See In re Paulson*, 341 Or 13, 29-34, 136 P3d 1087 (2006) (considering the duty breached, the lawyer's mental state, any actual or potential injury caused, any aggravating and mitigating factors, and this court's case law).

In this case, the accused's misconduct violated his duty to preserve Tidrick's property and his duty to the profession not to charge, collect, or retain unreasonable or improper

---

[9] The accused prepared a reconstructed accounting for the Bar in cooperation with its investigation of this case. That accounting shows that, multiplying the number of hours worked by an hourly rate, the accused earned $3,310; he worked 10.9 hours at a rate of $250 per hour and 1.8 hours at a rate of $325 per hour.

fees. American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) 4.1 & 7.0. The accused knew or should have known that he was dealing improperly with Tidrick's funds, and his misconduct injured Tidrick because she did not, and still does not, have access to funds that rightfully are hers. Preliminarily, we conclude that an appropriate sanction for such misconduct is suspension. ABA Standard 4.12; *see Balocca*, 342 Or at 296-97 (reaching that conclusion on similar facts).

We also conclude that two aggravating factors and one mitigating factor are present here. The accused has substantial experience in the practice of law, having been a member of the Oregon State Bar since 1957 and a member of this court from 1989 to 1998. *See* ABA Standard 9.22(i) (identifying substantial experience in the practice of law as an aggravating factor). The accused was a member of this court when *Hedges*, *Biggs*, and *Gastineau* were decided. The accused, however, has refused to acknowledge that, under those decisions, his conduct was wrongful. *See* ABA Standard 9.22(g) (identifying refusal to acknowledge wrongful nature of conduct as an aggravating factor). The mitigating factor that is present is the accused's full cooperation with the Bar's investigation of this case. *See* ABA Standard 9.32(e) (identifying full cooperation as a mitigating factor).

The accused argues that his offers to arbitrate this matter and the fact that he tendered $8,000 to the bar should be viewed as mitigating factors. ABA Standard 9.32(d) identifies a "timely good faith effort to make restitution or to rectify consequences of misconduct" as a mitigating factor. In our view, the accused's offers to arbitrate do not qualify as such an effort. The accused prefaced his offers with a statement that he owed Tidrick nothing and, in making the offers, never provided her with an accounting, which would have permitted her to determine how much, in her view, he owed her. Similarly, the accused twice tendered an $8,000 check to the Bar to hold in escrow pending resolution of this matter, but that act does little to rectify the consequences of the accused's misconduct. Rather, it simply ensures that funds will be available for Tidrick if and when some entity (the trial panel, the court, or an arbitrator) determines that she is entitled to the unearned portion of the retainer. Although we do

not view the accused's efforts as a mitigating factor under ABA Standard 9.32(d), we conclude that, on balance, the aggravating and mitigating factors are roughly equal in this case.

We turn to a consideration of our cases. In *Balocca*, this court suspended a lawyer for 90 days for violating DR 9-101(A), DR 9-101(C)(3), DR 2-106(A), DR 2-110(A)(3), and DR 5-105(C) (former client conflict of interest). 342 Or at 298. This case differs from *Balocca* in that the lawyer in that case violated an additional disciplinary rule, which the accused did not. Moreover, the court found several aggravating factors in *Balocca*, such as deceit during the disciplinary process, but no mitigating factor. *Id.* at 297.

This case is closer to *In re Eakin*, 334 Or 238, 48 P3d 147 (2002), in which this court suspended a lawyer for 60 days for violating DR 9-101(A), DR 9-101(C)(3), and DR 9-101(C)(4) (failure to return client property promptly). Although the accused did not violate DR 9-101(C)(4), as the lawyer in *Eakin* did, the accused violated a similar rule, DR 2-110(A)(3), which the lawyer in *Eakin* did not. Additionally, although the accused violated DR 2-106(A), which the lawyer in *Eakin* did not, that violation is cumulative of the accused's violation of DR 2-110(A)(3). *See Balocca*, 342 Or at 293 (so indicating). Finally, the aggravating and mitigating factors present in *Eakin* were similar to those present here except that the aggravating factors outweighed the mitigating factors. *See* 334 Or at 258. Those circumstances suggest that the accused should receive a similar or less severe sanction.

Another case suggests that the accused should receive a lighter sanction than the lawyer in *Eakin* did. In *Hedges*, this court suspended a lawyer for 63 days for violating *former* DR 9-101(B)(3) (1988) (failure to render accounting), *former* DR 9-101(B)(4) (1988) (failure to return client property promptly), DR 6-101(B) (neglect of a legal matter), DR 1-102(A)(3) (misrepresentation), and DR 1-103(c) (failure to cooperate with disciplinary investigation). 313 Or at 626. Although the accused violated the current versions of two of the rules violated by the lawyer in *Hedges*, the lawyer in

*Hedges* also violated several other, unrelated rules. Those circumstances suggest that the accused should receive a less onerous sanction than the lawyer in *Hedges*.

We conclude that a 30-day suspension is appropriate in this case. Although the accused violated multiple disciplinary rules, all his violations stemmed essentially from one act—his failure to recognize that he needed to reduce the fee agreement to writing. The circumstances here are slightly less egregious than they were in *Eakin*, and the accused's aggregate offenses are less than those of the lawyer in *Hedges*. Moreover, we note that the Bar has not argued that we should impose a greater sanction than 30 days. Accordingly, we conclude that a 30-day suspension is appropriate in this case.

In addition to suspension, the Bar asks the court to order restitution. Specifically, the Bar notes that the accused has acknowledged in his reconstructed accounting that the value of the services that he provided Tidrick is $3,310. It follows, the Bar contends, that the accused effectively has admitted that, if the money that Tidrick paid him were a retainer, he owes her $6,690. The Bar accepts the accused's reconstructed accounting and argues that we should order him, as part of the sanction, to pay Tidrick the unearned portion of the retainer.

Although BR 6.1(a) permits the court to award restitution in an appropriate case,[10] we decline to do so here. The accused did not refund Tidrick the unearned portion of the $10,000 because he took the view that, under their oral agreement, the funds were his. We have now held that the accused's view of his ethical obligations is not correct. The funds were Tidrick's, not the accused's. The accused held the funds in trust until he earned them. The accused has an ethical obligation to return the unearned portion of the $10,000 retainer promptly to Tidrick, and we have no reason to

---

[10] BR 6.1(a) provides:

"In conjunction with a disposition or sanction referred to in this rule [such as suspension or disbarment], an accused may be required to make restitution of some or all of the money, property or fees received by the accused in the representation of a client, or reimbursement to the Client Security Fund."

believe that, given our decision, the accused will not comply with that obligation.

The accused is suspended from the practice of law for 30 days, commencing 60 days from the date of this decision.